**GENERRA SPORTSWEAR COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 86–12–01591.**

United States Court of International Trade.

June 8, 1989.

Rode & Qualey, Michael S. O'Rourke, Patrick D. Gill and Eleanore Kelly–Kobayashi, New York City, for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, New York City, John J. Mahon, for defendant.

## OPINION

TSOUCALAS, Judge:

Plaintiff Generra Sportswear Company brings this action to contest the denial of its protest of a decision by the United States Customs Service (Customs) to include quota charges in the appraised value of certain merchandise from Hong Kong. This action is submitted for decision solely upon the pleadings and an agreed Stipulation of Facts in lieu of trial (Stipulation). The Court has jurisdiction under 28 U.S.C. § 1581(a) (1982).

### Background

Plaintiff negotiated with Bagutta Garment Ltd. (Bagutta) in Hong Kong, for the purchase of 595 pieces of woven 100% cotton knit blouses at a cost of US$6.00 per unit. Stipulation at ¶ 4. As part of the negotiation, Bagutta agreed to obtain on behalf of plaintiff "Type A Transfer of Quota for Export of Textiles to the United States" at a cost of US$.95 per unit. *Id.* at ¶ 5. Due to Bagutta's delay in obtaining Type A Transfer quota for this shipment, it was forced to pay US$1.28 per unit instead of the US$.95 per unit it had negotiated with plaintiff. *Id.* at ¶ 9. Plaintiff paid Bagutta for the merchandise by means of a letter of credit in the amount of US$3,570.00. *Id.* at ¶ 13. The quota charges were separately billed to, and paid by, plaintiff's Hong Kong buying agent, Generra H.K., in the amount of US$565.25. *Id.* at ¶¶ 14–15.

Customs appraised the subject merchandise on the basis of transaction value as defined in § 402(b) of the Tariff Act of 1930, as amended by the Trade Agreements Act of 1979 (19 U.S.C. § 1401a(b) (1982)), and concluded that the amount paid for quota charges was properly part of the dutiable value of the merchandise. It is plaintiff's contention that these quota payments are not part of dutiable value because they are neither paid "for the merchandise" nor are among the list of items found in § 1401a(b)(1) which can increase the amount actually paid or payable for the merchandise.[1] The sole issue for determi-

---

1. Section 1401a(b)(1) reads as follows:

    (1) The transaction value of imported merchandise is the price actually paid or payable

nation, thus, is whether quota charges should be included as part of the subject merchandise's transaction value for purposes of § 1401a(b).

## Discussion

The proper basis of appraisal for the instant merchandise is transaction value, which is "the price actually paid or payable for the merchandise when sold for exportation to the United States" plus amounts attributable to items in subparagraphs (A) through (E) of § 1401a(b)(1). Quota payments are not among the items included within subparagraphs (A) through (E) and plaintiff argues that they are, therefore, not part of transaction value as set forth in the statute. 19 U.S.C. § 1401a(b)(1)(A–E). Defendant claims that it is permissible for Customs to interpret the statute so as to include quota charges provided its interpretation is sufficiently reasonable. In this regard, defendant invokes the statutory presumption of correctness afforded Customs appraisements. *See* 28 U.S.C. § 2639(a)(1). Additionally, defendant argues that great weight must be given to prior administrative practice involving contemporaneous construction of a statute to justify including quota payments to the seller within transaction value. Brief for United States, Defendant at 3–8 [hereinafter "Defendant's Brief at ——"].

It has been the practice of Customs to hold quota charges nondutiable when the buyer made payments directly to a third party quota holder who was unrelated to both the buyer and the seller. However, in instances where the quota charges were prepaid by the manufacturer, Customs found the payments to be part of the "price actually paid or payable" for the merchandise. C.S.D. 81–86 (Sept. 18, 1980). Consequently, Customs considered all monies paid to the foreign seller to be part of the "price actually paid or payable" for the imported merchandise irrespective of the status of the quota holder. The Court, however, finds no merit in Customs' prior practice; the distinction made has no statutory support.

In the absence of ambiguity, the plain language of a statute prevails unless adhering to the literal construction is manifestly contrary to the intent of Congress. *Intercontinental Fibres, Inc. v. United States*, 406 F.Supp. 1221 (Cust.Ct.1975), *aff'd*, 64 CCPA 31, 545 F.2d 744 (1976); *Int'l Expediters, Inc. v. United States*, 38 Cust. Ct. 230, C.D. 1869 (1957). The Court finds no ambiguity in the statute concerning quota. Section 1401a(b)(1) unequivocally states that items in subparagraphs (A) through (E) *and no others* are to increase the "price actually paid or payable." The term "price actually paid or payable" means "the total payment ... made, or to be made, *for imported merchandise by the buyer to*, or for the benefit of, the seller." Section 1401a(b)(4)(A) (emphasis added); *see also* 19 C.F.R. § 152.103(a) (1988). Hence, the payment must meet two requirements to be dutiable: (1) the payment must be made for the imported merchandise, and (2) the payment must be made by the buyer to, or for the benefit of, the seller. Here, the payment did not meet the first requirement in that it was not made "for imported merchandise" but made "for quota" and, therefore, it is not properly

---

for the merchandise when sold for exportation to the United States, plus amounts equal to—

  (A) the packing costs incurred by the buyer with respect to the imported merchandise;

  (B) any selling commission incurred by the buyer with respect to the imported merchandise;

  (C) the value, apportioned as appropriate, of any assist;

  (D) any royalty or license fee related to the imported merchandise that the buyer is required to pay, directly or indirectly, as a condition of the sale of the imported merchandise for exportation to the United States; and

  (E) the proceeds of any subsequent resale, disposal, or use of the imported merchandise that accrue, directly or indirectly, to the seller.

  The price actually paid or payable for imported merchandise shall be increased by the amounts attributable to the items (*and no others*) described in subparagraphs (A) through (E) only to the extent that each such amount (i) is not otherwise included within the price actually paid or payable; and (ii) is based on sufficient information. (Emphasis added.)

includable in the dutiable value of the merchandise.

Defendant further contends that payments made for quota by the buyer to the seller are part of the "price actually paid or payable" because they are made to or for the benefit of the seller. Defendant's Brief at 5. The Court does not find a benefit conferred in favor of Bagutta in the instant action. There is no evidence that a benefit may have been conferred upon Bagutta through tying in the purchase of the merchandise with the purchase of the quota. The charges for quota were negotiated, but not as a condition of sale. Had the quota charges been required *as a condition of sale* by the seller, they would have been includable in "the price actually paid or payable for the merchandise." *See* H.R. Rep. No. 1346, 96th Cong., 2d Sess. 1, 4, *reprinted in* 1980 U.S.Code Cong. & Admin.News 5387, 5390. There being no evidence in the record to the contrary, the Court does not find the quota payments to be included in the price paid or payable for the merchandise.

Moreover, in the absence of express congressional intent, the Court is bound by the conclusion reached in *United States v. Getz Bros. & Co.*, 55 CCPA 11, C.A.D. 927 (1967).[2] In determining the dutiability of quota charges under "export value," the Court in *Getz* found that:

> [The quota] charge, ... was not a part of the *per se* value of the merchandise ... [and] any charge made by the mill for an export quota ... must be considered an expense ... not a part of the value of the merchandise exported.... [C]harges for a quota ... formed no part of the purchase price of the plywood for export, nor did it ... form any part of the costs, charges and expenses incident to placing the merchandise in condition packed ready for shipment to the United States.

55 CCPA at 16–17, 22 (citations omitted). In the instant action, the quota charges are also not a part of the *per se* value of the blouses. It was clearly demonstrated that the quota charge represented the cost of securing the quota from a third party. Under these circumstances, where the payment for quota is clearly discernible from the price of the merchandise, where the quota charge is treated separately on the invoices sent to different parties of the transaction, and where the quota is purchased for the benefit of the buyer, the quota payments cannot be said to comprise part of the "price actually paid or payable for the merchandise." [3]

Defendant questions the applicability of *Getz* as it was decided under a prior statute which based appraisement of merchandise on "export value" instead of "transaction value." Specifically, defendant argues that the question in *Getz* was whether certain quota charges formed part of the freely offered price under statutory export value, whereas here, the question under the Trade Agreements Act of 1979, is whether quota charges paid by the buyer of imported merchandise to the seller constitute part of the "price actually paid or payable" for the merchandise.

A prior case is valid precedent if "the language of the earlier statute is not significantly different from the quoted provision of the current statute." *E.C. McAfee Co. v. United States*, 842 F.2d 314, 318 (Fed.Cir.1988) (referred to *Getz* as "a precedential decision of the Court of Customs and Patent Appeals" on a different issue). "While transaction value is a different basis of value than export value, the practical effects in terms of differences in appraised values appear to be minimal, because under [export value], the U.S. Customs Service frequently use[d] the transaction or invoice price to calculate a statutory export value." S.Rep. No. 249, 96th Cong., 1st Sess. 1, 119,

---

**2.** In *Getz,* the Japanese government established a quota and licensing system due to an overexpansion of production capacity which drove the price of plywood down. The quota system limited the amount of plywood that could be exported to the United States. An export license could not be obtained unless the exporter had a quota for the shipment.

**3.** A caveat is in order because the Court agrees with the Customs Service that if these payments had been made directly to the seller, without the involvement of a third party or as a condition of sale of the merchandise, there would be a serious question as to their nondutiability.

**1104**

reprinted in 1979 U.S.Code Cong. & Admin.News 381, 505. Additionally, in certain MTN studies which analyzed the consequences of transferring to transaction value, "[t]he valuation technique of ... [transaction value was found to be] very similar in many respects to that for the current U.S. system [export value], notwithstanding the many differences in terminology." Committee on Finance, U.S. Senate, Multilateral Trade Negotiations Studies 6, Part 2, U.S. Gov't Printing Office (1979) (prepared to implement the results of the Tokyo Round of Multilateral Trade Negotiations) (MTN Studies). Under both systems, the starting point is the price of the actual transaction which may be adjusted in several respects. *Id.* The Court finds that *Getz* is applicable to the present action since the substance of the provision has not been substantially altered by conversion to the transaction method of valuation. *See id.* at 9–11.

### Conclusion

The Court finds the decision by Customs not to be a reasonable interpretation of the statute. Had Congress intended quota charges to be included within transaction value, it would have so provided in subparagraphs (A) through (E). Not having done so, the obvious conclusion is that the quota charges are not dutiable.

### JUDGMENT