**GENERRA SPORTSWEAR COMPANY,**
Plaintiff–Appellee,

v.

**The UNITED STATES,**
Defendant–Appellant.

No. 89–1652.

United States Court of Appeals,
Federal Circuit.

May 22, 1990.

Rehearing Denied June 18, 1990.

Michael S. O'Rourke and Patrick D. Gill, Rode & Qualey, New York City, argued for plaintiff-appellee. With them on the brief were William J. Maloney and Eleanore Kelly–Kobayashi.

John J. Mahon, Commercial Litigation Branch, Dept. of Justice, New York City, argued for defendant-appellant. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office. Also on the brief were Steven Berke and Chi Choy, U.S. Customs Services, Office of the Asst. Chief Counsel, Intern. Trade Litigation, of counsel.

Vincent James Adduci, II, Adduci, Mastriani, Meeks & Schill, Washington, D.C., was on the brief for amicus curiae, American Fiber Textile Apparel Coalition.

Before NEWMAN and MAYER, Circuit Judges, and DUPLANTIER, District Judge.[*]

## OPINION

MAYER, Circuit Judge.

The United States appeals the judgment of the United States Court of International Trade, 715 F.Supp. 1101 (1989), holding that a payment made on behalf of Generra Sportswear Company to a Hong Kong exporter for quota should not have been included in transaction value under 19 U.S.C. § 1401a(b)(1) (1988) and ordering the United States Customs Service to refund excess duties collected. We reverse.

### Background

Generra Sportswear Company of Seattle, Washington, contracted to purchase 595 women's 100% cotton knit blouses from Bagutta Garment Ltd. of Hong Kong at a price of $6.00[1] each. Bagutta agreed to obtain Type A Transfer quota for category 338/339 at $0.95 per unit.[2] Bagutta obtained quota for the shipment from LCL Manufacturer Co., Ltd. of Hong Kong at $1.28 per unit,[3] the cost of quota having gone up since Bagutta received Generra's purchase order.

Bagutta billed Generra for the merchandise under an invoice in the amount of $3,570 (595 units at $6.00 per unit), and Generra paid Bagutta this amount by a letter of credit. Bagutta billed Generra's Hong Kong buying agent, Generra Sportswear (HK) Ltd., for the quota charges under a separate invoice in the amount of $565.25 (595 units at $0.95 per unit). Generra HK paid Bagutta $15,891.60 for the quota charges for this shipment and others.

The documents accompanying the shipment of blouses when it arrived in Seattle included an export license referencing the transfer of quota, the invoice to Generra in the amount of $3,570, and the invoice to Generra HK in the amount of $565.25. The Customs Service appraised the imported merchandise by combining the amounts stated on the two invoices for a transaction value of $6.95 per unit.

Generra filed a protest, claiming that the quota charges should not have been included in the appraised value. Customs denied the protest, concluding that all monies paid to the seller are includable in transaction value. Generra brought suit in the Court of International Trade challenging the denial of its protest. Ruling on the basis of the pleadings and a stipulation of facts, that court held that the quota charges were not dutiable because they: 1) do not meet the requirement of 19 U.S.C. § 1401a(b)(4)(A) that the payment be made "for imported merchandise"; 2) conferred no benefit on the seller; 3) were not a condition of sale; 4) were not part of the *per se* value of the blouses; and 5) were discernible from the price of the merchandise and treated separately on the invoices. The court thought *United States v. Getz Bros. & Co.*, 55 C.C.P.A. 11 (1967), holding that quota charges were not part of "export value" under an earlier statute, governs here.

### Discussion

#### A.

The issue on this appeal, whether the quota charges were properly included in transaction value, is a matter of statutory construction. Therefore, we begin our

---

[*] Judge Adrian Duplantier of the United States District Court for the Eastern District of Louisiana, sitting by designation.

1. All dollar amounts are expressed in United States dollars.

2. As a means of complying with voluntary restraint agreements with the United States, Hong Kong requires that an export license be obtained for each shipment for export. The pay-

ment made to obtain the export license is known as a quota charge. *See* 53 Fed.Reg. 46626 (November 18, 1988).

3. An exporter can obtain an export license by purchasing quota from another party. A Hong Kong government document of record evidences the transfer of quota from LCL to Bagutta.

analysis with the language of the statute. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). In pertinent part, 19 U.S.C. § 1401a(b)(1) (1988) provides: "The transaction value of imported merchandise is the price actually paid or payable for the merchandise when sold for exportation to the United States, plus amounts equal to [specified items]."[4] These items must be added to the price actually paid or payable if they are not otherwise included in the price and if they are based on sufficient information. The government does not contend that quota charges are encompassed by any of the enumerated items, but that they are part of the "price actually paid or payable." This is defined in subsection 1401a(b)(4)(A):

> The term "price actually paid or payable" means the total payment (whether direct or indirect, and exclusive of any costs, charges, or expenses incurred for transportation, insurance, and related services incident to the international shipment of the merchandise from the country of exportation to the place of importation in the United States) made, or to be made, for imported merchandise by the buyer to, or for the benefit of, the seller.

Section 1401a(b)(3) specifies certain items that are not included in transaction value,[5] if they are identified separately from the price actually paid or payable and from any cost or other item referred to in section (b)(1). Generra does not contend that quota charges are excluded from transaction value by section 1401a(b)(3).

Therefore, because section 1401a(b) does not precisely address whether or not quota payments may be included in transaction value, we determine whether the appraisal was based on a permissible construction of the statute. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Customs' interpretation will be accepted if it is "sufficiently reasonable." *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981). Unless it is clear that Congress' intent was to the contrary, courts normally defer to the agency's construction of the statutory scheme it administers. *Japan Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 233, 106 S.Ct. 2860, 2867, 92 L.Ed.2d 166 (1986); *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782.

**B.**

We think Customs' construction of section 1401a(b), that transaction value may include quota charges, is permissible. It is reasonable to conclude that these charges were part of the "price actually paid or payable," defined in subsection 1401a(b)(4)(A) as "the total payment ... made, or to be made, for imported merchandise by the buyer to, or for the benefit of, the seller." The total payment from Generra to Bagutta was $6.95 per unit. The term "total payment" is all-inclusive. If Congress had intended to exclude quota payments from transaction value, it could have included them among the explicit exclusions enumerated in section 1401a(b)(3).

---

4.  (A) the packing costs incurred by the buyer with respect to the imported merchandise;
(B) any selling commission incurred by the buyer with respect to the imported merchandise;
(C) the value, apportioned as appropriate, of any assist;
(D) any royalty or license fee related to the imported merchandise that the buyer is required to pay, directly or indirectly, as a condition of the sale of the imported merchandise for exportation to the United States; and
(E) the proceeds of any subsequent resale, disposal, or use of the imported merchandise that accrue, directly or indirectly, to the seller.

5.  (A) Any reasonable cost or charge that is incurred for—
(i) the construction, erection, assembly, or maintenance of, or the technical assistance provided with respect to, the merchandise after its importation into the United States; or
(ii) the transportation of the merchandise after such importation.
(B) The customs duties and other Federal taxes currently payable on the imported merchandise by reason of its importation, and any Federal excise tax on, or measured by the value of, such merchandise for which vendors in the United States are ordinarily liable.

*Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616, 100 S.Ct. 1905, 1910, 64 L.Ed.2d 548 (1980).

It is not important that the buyer itself did not pay the seller for the quota charges; the payment was made on behalf of Generra by its Hong Kong buying agent. Further, Generra admits that the "question whether or not the seller benefited from the quota payment is a non-issue in this case." When the payment is made to the seller, it is not necessary to get into whether the seller benefited; the statute is written in the alternative: "to, or for the benefit of, the seller." 19 U.S.C. § 1401a(b)(4)(A).

The thrust of Generra's argument, and the essence of the trial court's reasoning, is that the quota payment was not "for imported merchandise." Generra calls this a factual finding that the quota payment was not "for imported merchandise," and that this finding must be accepted unless clearly erroneous. Quite to the contrary, however, this is not a factual finding; it is a construction of the statute. Generra also says the trial court's "finding" is supported by the stipulated facts. But the parties cannot stipulate to the meaning of a statute; that is a judicial function.

Accepting the stipulated fact that $0.95 of the total payment to Bagutta was for quota charges, it was reasonable for Customs to conclude that the entire payment was "for imported merchandise" within the meaning of subsection 1401a(b)(4)(A). A permissible construction of the term "for imported merchandise" does not restrict which components of the total payment may be included in transaction value. Congress did not intend for the Customs Service to engage in extensive fact-finding to determine whether separate charges, all resulting in payments to the seller in connection with the purchase of imported merchandise, are for the merchandise or for something else. As we said in *Moss Mfg. Co. v. United States*, 896 F.2d 535, 539 (Fed.Cir.1990), the "straightforward approach [of section 1401a(b)] is no doubt intended to enhance the efficiency of Customs' appraisal procedure; it would be frustrated were we to parse the statutory language in the manner, and require Customs to engage in the formidable fact-finding task, envisioned by [appellant]."

As long as the quota payment was made to the seller in exchange for merchandise sold for export to the United States, the payment properly may be included in transaction value, even if the payment represents something other than the *per se* value of the goods. The focus of transaction value is the actual transaction between the buyer and the seller; if quota payments were transferred by the buyer to the seller, they are part of transaction value. That transaction value may encompass items other than the pure cost of the imported merchandise is reflected in section 1401a(b)(3), governing exclusions from transaction value. If excludable costs or charges are not identified separately from the price actually paid or payable, they are included in transaction value.

It was not necessary for the Customs Service to find that the quota charge was imposed as a condition of sale before considering it part of the "price actually paid or payable" under subsection 1401a(b)(4)(A). Nothing in the statute requires that. On the other hand, that a foreign seller must obtain quota before he can export goods to the United States reasonably indicates that quota payments are part of the "price actually paid or payable for the merchandise when sold for exportation to the United States." 19 U.S.C. § 1401a(b)(1).

That was the case here. Bagutta applied for an export license from the Hong Kong Department of Trade before shipping the blouses to Generra; the license form required Bagutta to name the quota holder, the quota reference and the quantity being shipped in quota units. The export license accompanied the goods out of Hong Kong as proof that Bagutta had quota for the shipment. Indeed, if quota were not a prerequisite to exportation, one wonders why Bagutta paid more than the contract price for quota, taking a loss, or even agreed to obtain quota in the first place.

## C.

Our conclusion that the appraisal of Generra's shipment of imported merchandise was based on a reasonable construction of section 1401a(b) is not contrary to *United States v. Getz Bros. & Co.*, 55 C.C.P.A. 11 (1967), which was decided before that provision was amended by the Trade Agreements Act of 1979.[6] Before the 1979 Act, imported merchandise was appraised on the basis of "export value":

> [T]he export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

19 U.S.C. § 1401a(b) (1964); *Getz*, 55 C.C.P.A. at 15. In reviewing Customs' determination of "export value," *Getz* considered whether: 1) the plywood sold by the mills was "freely offered" to all purchasers or whether the quota system limited the class of buyers; 2) as a factual matter, quota generally formed part of the price of the plywood sold by the mills; and 3) there was a single price offered in the principal markets of Japan to all purchasers in the ordinary course of trade for exportation to the United States. By contrast, in determining "transaction value" we look at the actual transaction between Bagutta and Generra. The factors recited above considered by *Getz* in approving an appraisal based on "export value" that excluded quota pay-

ments are not relevant to the determination of transaction value.

The critical differences between "export value" and "transaction value" are pointed out in the background material for the Trade Agreements Act of 1979:

> The use of transaction value as the primary basis for customs valuation will allow use of the price which the buyer and seller agreed to in their transaction as the basis for valuation, rather than having to resort to the more difficult concepts of "freely offered," "ordinary course of trade," "principal markets of the country of exportation," and "usual wholesale quantities" contained in existing U.S. law.

S.Rep. No. 96–249, 96th Cong., 1st Sess. 119, *reprinted in* 1979 U.S.Code Cong. & Admin.News 381, 505. Although the Senate Report predicted that "the practical effects in terms of differences in appraised value appear to be minimal," *id.*, it is clear from the focus on the actual transaction rather than wholesale prices in general that quota charges may be treated differently, depending on the facts, when the appraisal is based on transaction value instead of export value.[7]

### Conclusion

Accordingly, the judgment of the Court of International Trade is reversed.

REVERSED.

**6.** July 26, 1979, Pub.L. 96–39, Title II, § 201(a).

**7.** *E.C. McAfee Co. v. United States,* 842 F.2d 314, 318 (Fed.Cir.1988), relied on *Getz* for the proposition that, in a three-tiered distribution system, "if the transaction between the manufacturer and the middleman falls within the statutory provision for valuation, the manufacturer's price, rather than the price from the middleman to his customer, is used for the appraisal." This has nothing to do with whether quota charges may be part of transaction value under the new statute.