SULZER ESCHER WYSS, INC., PLAINTIFF v. UNITED STATES, DEFENDANT

Court No. 92–05–00325

(Decided June 22, 1993)

*Michael P. Maxwell* for plaintiff.
*Stuart E. Schiffer,* Acting Assistant Attorney General, *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice *(James A. Curley)* for defendant.

## OPINION

RESTANI, *Judge:* This matter is before the court for decision following trial *de novo.* Plaintiff, Sulzer Escher Wyss, Inc. ("Sulzer"), challenges the decision of the United States Customs Service regarding the classification of cylinders and other parts of supercalendering machines used in the production of paper under the Harmonized Tariff Schedules of the United States ("HTSUS"). Sulzer asserts that supercalenders, and the parts thereof, are properly classifiable as "[c]alendering or similar rolling machines for making paper pulp, paper or paperboard" under items 8420.10.20, 8420.91.20 and 8420.99.20, HTSUS. Defendant asserts that Customs properly classified supercalenders, and the parts thereof, as "other" calendering machines not for making paper pulp, paper or paperboard under items 8420.10.90, 8420.91.90 and 8420.99.90, HTSUS, because supercalenders finish rather than make paper. A machine calender, which performs the same type of function as a supercalender but is located on the papermaking machine, is admitted to be a calender for making paper. The issue before the court is whether a supercalender should be classified differently from a machine calender because of its location off the papermaking machine.

## FACTS

Sulzer designs, manufactures, and vends paper manufacturing equipment. The parts of supercalenders which are the subject of this action were used to assemble two supercalenders purchased by Consolidated Paper Company for its Wisconsin Rapids Division ("Wisconsin Rapids Division"). That division is a fully integrated paper mill engaged in the manufacture of paper.

Paper manufacture consists of stock preparation, web formation, dewatering and finishing. There are several types of paper finishing. There is a type of paper finishing which includes the converting processes that involve slitting, rewinding, trimming, sorting, carting and packaging. This type of finishing is not part of paper manufacture.

There is another kind of paper finishing that changes the surface of the paper by changing its optical and strength characteristics. A papermaking machine, which consists of the composite of all on-line papermaking machinery, may accomplish this type of finishing with "machine" calenders. Such finishing is also accomplished off the papermaking machine by supercalenders.

Supercalenders consist of a calender stack used to increase the density, smoothness, and gloss of paper. They have alternate chilled metal and soft rolls through which paper is passed. The soft rolls are constructed of highly compressed cotton or paper.[1] To date, supercalenders, unlike machine calenders, are not located on the papermaking machine itself. The off-line location facilitates replacement of soft rolls. The supercalenders at the Wisconsin Rapids Division are located physically in a space that is separated from the papermaking machine in a building which is part of the finishing department. This is not an uncommon arrangement. As indicated, calenders that are located on the machine are admitted by both parties to be part of paper manufacture. In the case of the papermaking process at issue, there are no on-line calenders. All calendering occurs off-line by means of supercalenders.

### DISCUSSION

Both parties agree that the imported merchandise in question is properly classifiable under heading 8420, HTSUS, referring to calendering or other rolling machines, and parts thereof.[2] Customs classifies supercalenders, and parts thereof, under items 8420.10.90, 8420.91.90 and 8420.99.90, HTSUS. Sulzer asserts that supercalenders are properly classified under items 8420.10.20, 8420.91.20 and 8420.99.20, HTSUS.

## I. *Finishing/Making Distinction:*

According to the Explanatory Notes to the Harmonized Tariff System, "[t]he manufacture of paper, whether by machine or by hand, may be considered as being in three stages, the preparation of pulp, formation of the sheet or web, and finishing."[3] Customs Co-Operation Council, 2 Harmonized Commodity Description and Coding System,

---

[1] On-line calenders have only metal rolls.

[2] The relevant provisions of HTSUS read as follows: CHAPTER 84—NUCLEAR REACTORS, BOILERS, MACHINERY AND MECHANICAL APPLIANCES; PARTS THEREOF

| | | |
|---|---|---|
| * * * * * * * | | |
| 8420 | Calendering or other rolling machines, other than for metals or glass, and cylinders therefor; parts thereof: | |
| 8420.10 | Calendering or other rolling machines: | |
| * * * * * * * | | |
| 8420.10.20 | Calendering or similar rolling machines for making paper pulp, paper or paperboard ...................................................... | Free |
| 8420.10.90 | Other ............................................................... | 3.7% |
| * * * * * * * | | |
| | Parts: | |
| 8420.91 | Cylinders: | |
| * * * * * * * | | |
| 8420.91.20 | For calendering or other rolling machines for machines for making paper pulp, paper or paperboard .................................... | Free |
| 8420.91.90 | Other .............................................................. | 3.7% |
| 8420.99 | Other: | |
| * * * * * * * | | |
| 8420.99.20 | Of machines for making paper pulp, paper or paperboard ................. | Free |
| 8420.99.90 | Other ........................................... ........................ | 3.7% |

HTSUS (1987).

[3] De-watering (sometimes broken out as a fourth step) occurs in the formation stage.

Explanatory Notes, Ch. 48 General, at 664 (1st ed. 1986).[4] These notes indicate that finishing is part of paper manufacture, and thus it is an element in papermaking. This is in accord with industry understanding.

Defendant contends that the "finishing" of paper is recognized in the paper industry as an operation separate from "making" paper. As indicated, however, "finishing" has more than one meaning in the paper industry. Neither "making" nor "finishing" has defined tariff meanings. Webster's Third New International Dictionary 1363 (1981), defines "make" as, *inter alia,* "to bring (a material thing) into being by forming, shaping, or altering material: * * * MANUFACTURE." *See Clipper Belt Lacer Co. v. United States,* 14 CIT 146, 151, 738 F. Supp. 528, 534 (1990) (in determining common meaning of tariff term, court may consult dictionaries, lexicons, and testimony of record).

Defendant argues in particular that the making/finishing distinction is recognized in heading 8439, HTSUS, which provides for classifications of "machinery for making paper" and "machinery for finishing paper." Subheadings 8439.20, 8439.30, HTSUS. It is unclear which type of paper finishing (i.e., converting or the alteration of optical and strength characteristics) is the subject of heading 8439, but heading 8439 does not apply to calenders. Heading 8420 provides a separate and more specific classification provision for calender machines.[5] The distinction between papermaking and paper finishing machines found in heading 8439 is not relevant to the classification of calendering machines, which fall under a heading where a making/finishing distinction is not made. Rather, heading 8420 seems to be divided into calenders for all papermaking and textile functions and calenders for other industries.

## II. *On-Line/Off-Line Distinction:*

Under heading 8420, Customs classifies calender rolls differently depending on their location on or off the papermaking machine. On-line calender rolls are classified as calenders for "making paper pulp, paper, or paperboard." Off-line calender rolls for paper are classified as "other" calendering machines. Defendant argues that because the supercalender is off-line, unlike a machine calender which is on-line, it is not an integral part of the paper-making machine, and thus it is not a calender for making paper.

---

[4] While not binding, such notes are "generally indicative of proper interpretation of the various provisions of the [Harmonized Tariff System]." *Lynteq, Inc. v. United States,* 976 F.2d 693, 699 (Fed. Cir. 1992) (quoting H.R. Conf. Rep. No. 576, 100th Cong., 2d Sess. 549 (1988), *reprinted in* 1988 U.S.C.C.A.N 1547, 1582.).

[5] Rule 3(a) of the General Rules of Interpretation provides, *inter alia:*

> When, by application of rule 2(b) or for any other reason, goods are, *prima facie,* classifiable under two or more headings, classification shall be effected as follows:
> (a) The heading which provides the most specific description shall be preferred to headings providing a more general description.

General Rule of Interpretation 3(a) HTSUS (1987). Further, Note 2 to Chapter 84 states:

> a machine or appliance which answers to a description in one or more of the headings 8401 to 8424 and at the same time to a description in one or more of the headings 8425 to 8480 is to be classified under the appropriate heading of the former group and not the latter.

Note 2 to Chapter 84, HTSUS (1987). Thus, a supercalender, though perhaps fitting into subheading 8439.30, HTSUS, as a finishing machine, must nevertheless be classified under heading 8420 as a calender machine.

Although Customs' classification of imported merchandise is presumed to be correct, 28 U.S.C. § 2639(a)(1) (1988), the on-line/off-line distinction has no application to heading 8420.[6] First, it is admitted by both parties that a machine calender, which performs a finishing function, is a calender for making paper. A supercalender, although located off-line, also performs the same type of finishing function. The Explanatory Notes to Chapter 48 of the Harmonized Tariff System reflect the lack of distinction in calendering functions. They state that "[p]aper may be finished by calendering or supercalendering * * * either by calenders integral with the paper-making machine or separate from it." 2 Harmonized Commodity Description and Coding System, Explanatory Notes, Ch. 48 General, at 666.

Second, no express distinction is made in heading 8420 between calenders which are integral to or separate from the papermaking machine. Nor may this be inferred from the language of heading 8420. The heading distinguishes only between textile calendering, calendering for making paper, and all other calendering. Because a machine calender is admitted to be part of papermaking, a supercalender, which performs the same class of function as a machine calender, should not be classified differently under heading 8420 solely because of its location off the paper machine.

In conclusion, because paper finishing of the type which alters surface characteristics is generally considered to be the last step in the papermaking process, supercalenders, and the parts thereof, are to be classified as "calendering or similar rolling machines for making paper pulp, paper or paperboard" under items 8420.10.20, 8420.91.20 or 8420.99.20.[7] Accordingly, the merchandise at issue shall be reclassified under the appropriate subheading and any excess duties paid shall be refunded with interest as provided by law.

---

[6] In connection with construction of a valuation statute the Court of Appeals has held that *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 (1984), applies, so that any permissible construction of the statute by Customs will control. *Generra Sportswear Co. v. United States,* 905 F.2d 377, 379 (Fed. Cir. 1990) (cited by defendant in closing argument). It is not clear to what extent this issue was seriously argued before that court. Congress may have intended a less deferential approach when a court established to have particular expertise is construing a statute within its assigned area of expertise. Furthermore, in construing tariff classification, as opposed to valuation, provisions, the court must often make factual determinations regarding the meaning of terms used in a particular industry. These factual determinations are made in a trial *de novo.* Deference to Customs' statutory interpretation in this context would violate the statutory scheme and decades of practice. Assuming *arguendo* that interpretation of the tariff provisions at issue by the Customs Service are entitled to any deference, in this case the interpretation is unreasonable and contrary to the structure of the HTSUS.

[7] In closing arguments, defendant raised and distinguished *D.C. Andrews & Co. v. United States,* 47 Cust. Ct. 378 (1961). In *Andrews,* the court determined that a supercalender was properly classified under the Tariff Act of 1930, 19 U.S.C. § 1001, paragraph 372 (1958), for "machines for making paper and/or paper pulp." *Andrews,* 47 Cust. Ct. at 379. The court stated that "[i]nasmuch as the record discloses that the imported supercalender stack and parts therefor constitute a machine and parts thereof used in the manufacture of glossy finished paper, they come within the scope of the provision for 'machines for making paper' and parts thereof." *Id.* at 381. The court's discussion centered on whether the supercalender was an "article [ ] having as an essential feature an electrical element," rather than whether the supercalender's primary function was within the scope of "machines for making paper." *Id.* at 378–79. Thus, it is of some note, but is not dispositive.