828 F.Supp. 66

MURJANI INTERNATIONAL LTD., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Consolidated Court No. 82-02-00250

(Dated August 11, 1993)

*Grunfeld, Desiderio, Lebowitz and Silverman (Steven P. Florsheim, Robert Silverman* and *Frank Desiderio)* for plaintiff.

*Frank W. Hunger,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(John J. Mahon)* for defendant.

### OPINION

TSOUCALAS, *Judge:* Plaintiff Murjani International Limited, New York ("Murjani-New York"), challenges the U.S. Customs Service's ("Cus-

toms") denial of a series of protests by plaintiff, concerning the duty assessed on certain merchandise where Customs, in appraising the merchandise, included quota charges as part of the price paid by plaintiff for the merchandise. Plaintiff claims that Customs improperly included the quota charges as part of the export value, as set forth at 19 U.S.C. § 1401a(b) (1976), and improperly included the quota charges as part of transaction value, as set forth at 19 U.S.C. § 1401a(b) (1976 & Supp. III 1979), in appraising the value of the merchandise. This matter is before the Court for trial *de novo*. The Court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988).

## BACKGROUND

During the period 1979 to 1981, Murjani-New York imported garments into the United States from Hong Kong. Upon liquidation, Customs included the quota charges listed on the invoices from the seller, Murjani Garment Factory, Macau ("Murjani-Macau"), to Murjani-New York as part of the price paid to Murjani-Macau for the merchandise, thereby increasing the amount of duty to be paid by Murjani-New York. Plaintiff contends that such quota charges should not have been included in the price of the merchandise because it paid the exporter, Murjani Industries, Hong Kong ("Murjani-Hong Kong") for the entire invoiced amount, and that the seller, Murjani-Macau, only received from Murjani-Hong Kong the charges for the garments not the quota charges. In other words, plaintiff claims it never paid the seller of the garments for the quota charges. Transcript Record ("T.R.") at 6, 33–35.

Plaintiff protested the appraisals with Customs pursuant to 19 U.S.C. § 1514 (1988). Customs denied the protests after which plaintiff brought several actions in accordance with 28 U.S.C. §§ 2632(a), 2636(a) (1988) for the importations which occurred during the period of 1979 to 1981. These actions were consolidated under Consolidated Court No. 82–02–00250 upon agreement of both parties at trial. T.R. at 2–3.

## DISCUSSION

The statute governing these import transactions changed July 1, 1980. Hence, the transactions which occurred before July 1, 1980 are governed by "old" law. Those transactions which took place on or after July 1, 1980 are governed by "new" law.

The "old" law valuation standard was for merchandise to be appraised on the basis of export value. 19 U.S.C. § 1401a(a)(1) (1976). In that statute, export value is defined as "the price * * * at which such or similar merchandise is freely sold or * * * offered for sale in the principal markets of the country of exportation * * *." 19 U.S.C. § 1401a(b). Customs has ruled that when documentation and proof of purchase exist, quota charges are not part of the freely offered price of imported merchandise and, hence, not dutiable. *See* Plaintiff's Exhibit 1 (Customs Service Internal Advice No. 177/80 (542238 TLL)). The government concedes that quota charges for the transactions which occurred prior to July 1, 1980 should not have been included in the price of merchandise

because such documentation exists. T.R. at 109–10. Therefore Customs is directed to reliquidate the entries which occurred before July 1, 1980 so as not to include quota charges. *See* Schedule A attached.

The "new" law uses transaction value instead of export value as the standard for determining the dutiable value of the imported merchandise. 19 U.S.C. § 1401a(b) (1976 & Supp. III 1979). Transaction value is defined as "the price actually paid or payable for the merchandise when sold for exportation * * *." *Id.* The "price actually paid or payable" is defined at 19 U.S.C. § 1401a(b)(4)(A) as "the total payment * * * made, or to be made, for imported merchandise by the buyer to, or for the benefit of, the seller."

The Court of Appeals for the Federal Circuit recently held quota charges to be part of the "price actually paid or payable" under 19 U.S.C. § 1401a(b)(4)(A). *Generra Sportswear Co. v. United States,* 905 F.2d 377 (Fed. Cir. 1990). In *Generra,* the seller was paid quota charges by the buyer's agent who then invoiced the charges to the buyer. The invoice for the quota was included with the invoice for the merchandise as part of the entry documents. Customs combined both invoices in determining the transaction value. The Court reasoned that when quota charges are paid to, or for the benefit of, the seller, such charges should be included in the transaction value as they are not specifically excluded under section 1401a(b)(3), which lists those costs that are to be excluded from transaction value. *Id.* at 379–80.

According to *Generra,* the question before this Court is simply whether the seller was paid for the quota charges. In making such a determination, we bear in mind that, by law, Customs' appraisal of the transaction is presumed to be correct. As such, the burden of proof is on plaintiff to show that Customs was incorrect in its appraisal of the merchandise imported by the plaintiff. 28 U.S.C. § 2639(a)(1) (1988). Therefore, Murjani-New York has the burden of producing evidence and persuading this Court that Murjani-Macau was not paid the quota charges which appear on the invoices to the buyer Murjani-New York.

In support of its position, plaintiff offered the testimony of a single witness, Kaiser Ahmad, an independent consultant in financial systems and international business transactions. Mr. Ahmad was formerly employed by Murjani-Hong Kong from 1974 to 1979 and by Murjani-New York from 1979 to 1990. Mr. Ahmad testified that for the transactions in question, Murjani-New York contracted with Murjani-Macau for the manufacture of women's apparel. T.R. at 16–17. Murjani-Macau would in turn subcontract with other manufacturers in Hong Kong for the manufacture of the goods. T.R. at 14–17. Murjani-Hong Kong would act as the export agent purchasing quota as necessary to export the goods to Murjani-New York. T.R. at 17, 41. Mr. Ahmad further testified that Murjani-New York then paid Murjani-Hong Kong for the full amount of the invoice which included the charges for the goods and the accompanying quota, and that Murjani-Hong Kong retained the cost of the quota and remitted the charges for the goods to Murjani-Macau. T.R. at 34–35.

To corroborate this testimony plaintiff entered into evidence several sets of entry documents purporting to show that Murjani-New York did not pay Murjani-Macau but rather Murjani-Hong Kong.[1] Plaintiff then offered notices from the Hong Kong and Shanghai Bank of New York reflecting the sale of certain sums of Swiss francs to Murjani-New York which were payable to the account of Murjani-Hong Kong. In addition to the notices, reconciliation sheets were offered to show that the sum totals of bills from Murjani-Macau to Murjani-New York were reconciled with the claimed payments of Swiss francs to Murjani-Hong Kong. The reconciliation sheets, many handwritten, list bill numbers, invoice numbers, bill amounts and interest. Certain copies of correspondence from Murjani-New York to Murjani-Hong Kong on the subject of direct payment of Swiss francs to Murjani-Hong Kong are included among the reconciliation sheets. See Plaintiff's Exhibit 3.

The bank notices indicate that Murjani-New York was to remit "$CHECK" for the purchase price of the Swiss francs. However, no receipt, paid draft or other written evidence was offered to show that the transaction had been completed. Moreover, it is unclear how these records can be reconciled with each other. For example, Mr. Ahmad testified that the sum of two of the bank notices were used to retire the bills listed on sheet "A" (which, confusingly, is also labeled sheet "B"), as indicated on a handwritten master reconciliation sheet. T.R. at 47–48. Yet the master sheet reflects that different payment sums were also used to retire the same lists of bills. Mr. Ahmad was not able to clarify which sheet went with which payment. In addition, Mr. Ahmad testified on cross examination that there was nothing in the exhibit offered by plaintiff which demonstrates that Murjani-Hong Kong paid Murjani-Macau for the garments only, but that he knew such records existed. T.R. at 49–51. In other words, the documents offered to show such payments took place were confusing at best and did not corroborate the testimony of the witness. The documents which Mr. Ahmad claimed could have demonstrated such payments were made were not produced.[2]

Plaintiff also offered into evidence copies of invoices from the seller, Murjani-Macau, to the buyer, Murjani-New York, reflecting the costs of the apparel, the costs for quota, and the air freight charges. See Plaintiff's Exhibit 4. Listed on the invoices was the following note:

[1] The sets of entry documents include a consumption entry form from Customs, a carriers certificate, an invoice, a packing list, an export license, a certificate for transfer of quota, a receipt for the price of the quota issued by the transferor, and a debit note for the transfer of quota. The costs for the quota are reflected on the invoice. The transfer of quota documents indicate the permanent quota holder as the transferor and Murjani-Hong Kong as the transferee. The transfer documents also have a transfer number which is indicated on the export license—which also indicates Murjani-Hong Kong as the transferee. See, e.g., Plaintiff's Unmarked Exhibit, Entry No. 80–257849–7.

[2] The entry documents offered by plaintiff indicate that Murjani-Hong Kong paid outside sources for temporary quota. One logical inference which can be drawn from such evidence in support of plaintiff's position is that Murjani-Macau would not have received payment for such quota as it was not rightfully entitled to it, as Mr. Ahmad had testified. T.R. at 33. However, such evidence speaks more directly to who was rightfully entitled to be paid for the quota and most directly to who paid for the quota. The issue in this case is whether the quota charge was paid to the seller, regardless of who paid for it or who was rightfully entitled to it. Hence, this evidence addresses the issue in this case, at best, indirectly.

BANKER: THE HONG KONG AND SHANGHAI BANKING CORP., MACAU. "DRAFT DRAWN AT 120 DAYS D/A THROUGH MANUFACTURERS HANOVER TRUST COMPANY, NEW YORK, USA."

Accompanying the invoices were drafts reflecting the invoice numbers made out for the exact total costs listed on the respective invoice drawn by Murjani-Macau, the seller, on the Hong Kong and Shanghai Banking Corp., Macau. The draft had stamps on it indicating that it was registered for inward collection by the Hong Kong and Shanghai Banking Corp. as well as being accepted for collection by Manufacturers Hanover Trust Co., New York.

These documents did not support the testimony of plaintiff's witness. Mr. Ahmad testified that Murjani-New York never made payments to Murjani-Macau, but rather remitted directly to Murjani-Hong Kong. T.R. at 34–35. He further testified that the stamps on the draft do not indicate one way or the other whether the drafts were actually paid. T.R. at 33. This particular point was confirmed by defendant's witness, Mr. Peter Daniels, a supervisory auditor with Customs, who testified on direct examination that he would accept such a draft as evidence that payment was made to the seller, but then testified on cross-examination that an acceptance would need to be verified by a disbursements journal to show that payment was actually made after acceptance. T.R. at 102, 105–106. Had plaintiff offered such written proof to corroborate Mr. Ahmad's testimony, the evidence would be more persuasive. However, plaintiff did not present a disbursements journal or any other evidence reflecting the status of the drafts which were accepted for payment. As such, it remained the burden of plaintiff to show that such payments did not take place as indicated on the face of the invoices and drafts, i.e., that Murjani-Macau was not paid for the full amount reflected on the invoice. The Court finds that plaintiff has failed to do so.

CONCLUSION

Plaintiff has failed to meet its burden of proof as required by statute. 28 U.S.C. § 2639(a)(1). Plaintiff did not put forth evidence sufficient to persuade this Court that the seller was not paid for the quota charges as part of the value of the invoices, nor did plaintiff put forth evidence sufficient to persuade this Court that payments were made to another party in lieu of the seller as claimed. The presumption remains that Customs properly included the quota charges as part of the transaction value of the imports made after July 1, 1980. 19 U.S.C. § 1401a. Therefore, Customs is ordered to reliquidate entries made prior to July 1, 1980, so as to not include quota charges. *See* Schedule A attached. For entries made on or after July 1, 1980, Customs' denial of plaintiff's protests is affirmed. *See* Schedule B attached.

JUDGMENT

This case having been duly submitted for decision following trial *de novo,* and the Court, after due deliberation, having rendered a decision herein; now therefore, in accordance with said decision,

IT IS HEREBY ORDERED that the United States Customs Service ("Customs") is ordered to reliquidate the entries made prior to July 1, 1980 listed on Schedule A attached so as to not include quota charges; and it is further

ORDERED that for the entries made on or after July 1, 1980 listed on Schedule B attached, Customs' denial of plaintiff's protests is affirmed.

SCHEDULE A

| Entry No. | Entry date | Original Court No. |
|---|---|---|
| K79–659673 | 9/27/79 | 82–04–00447 |
| K79–662991 | 9/28/79 | 82–04–00447 |
| K79–662992 | 9/28/79 | 82–04–00447 |
| K80–255101 | 4/30/80 | 83–02–00174 |
| K80–786948 | 5/29/80 | 82–12–01756 |
| K80–786973 | 6/4/80 | 82–04–00447 |
| K80–786978 | 6/4/80 | 82–04–00447 |
| K80–257033 | 6/10/80 | 83–02–00307 |
| K80–256516 | 6/12/80 | 83–05–00780 |
| K80–256563 | 6/13/80 | 83–02–00307 |
| K80–257078 | 6/16/80 | 83–02–00307 |
| K80–787082 | 6/16/80 | 83–02–00307 |
| K80–787084 | 6/16/80 | 83–02–00307 |
| 80–787128 | 6/23/80 | 83–02–00307 |
| K80–256744 | 6/23/80 | 83–02–00307 |
| K80–787132 | 6/23/80 | 83–02–00307 |
| K80–787133 | 6/23/80 | 83–02–00307 |
| 80–787118 | 6/24/80 | 83–02–00174 |
| 80–787120 | 6/24/80 | 83–02–00174 |
| 80–787140 | 6/25/80 | 83–02–00174 |
| K80–787159 | 6/30/80 | 83–02–00307 |
| K80–787166 | 6/30/80 | 83–02–00307 |

SCHEDULE B

| Entry No. | Entry date | Original Court No. |
|---|---|---|
| K80–257217 | 7/1/80 | 83–02–00307 |
| K80–257313 | 7/3/80 | 83–02–00307 |
| 80–257386 | 7/7/80 | 83–02–00174 |
| 80–257388 | 7/7/80 | 83–02–00174 |
| K80–257207 | 7/7/80 | 82–04–00447 |
| K80–257391 | 7/7/80 | 82–04–00447 |
| K80–787203 | 7/7/80 | 83–02–00307 |
| 80–257385 | 7/8/80 | 83–02–00174 |
| 80–257420 | 7/8/80 | 83–02–00174 |
| 80–257421 | 7/8/80 | 83–02–00174 |
| 80–257426 | 7/8/80 | 83–02–00174 |
| K80–257384 | 7/8/80 | 83–02–00174 |
| K80–257393 | 7/8/80 | 82–04–00447 |
| K80–257413 | 7/8/80 | 82–02–00250 |
| K80–257418 | 7/8/80 | 82–04–00447 |
| K80–257425 | 7/8/80 | 82–04–00447 |
| K80–257428 | 7/8/80 | 82–04–00447 |
| K80–787233 | 7/8/80 | 83–02–00307 |
| K80–787235 | 7/8/80 | 83–02–00307 |
| 80–257412 | 7/9/80 | 83–02–00174 |
| 80–257416 | 7/9/80 | 83–02–00174 |
| 80–787205 | 7/9/80 | 83–02–00174 |
| 80–787236 | 7/9/80 | 83–04–00496 |
| 80–257761–8 | 7/10/80 | 82–04–00447 |
| K80–257660 | 7/10/80 | 82–04–00447 |
| K80–257670 | 7/10/80 | 82–02–00250 |
| 80–257766 | 7/11/80 | 83–02–00174 |
| 80–257849 | 7/13/80 | 82–04–00447 |

| Entry No. | Entry date | Original Court No. |
|---|---|---|
| 80–257771 | 7/14/80 | 83–02–00174 |
| 80–257776 | 7/14/80 | 83–02–00174 |
| 80–257777 | 7/14/80 | 83–02–00174 |
| K80–257770 | 7/14/80 | 82–04–00447 |
| K80–257775 | 7/14/80 | 83–02–00307 |
| K80–257848 | 7/14/80 | 82–04–00447 |
| 80–257720 | 7/15/80 | 83–02–00174 |
| 80–257854 | 7/15/80 | 83–02–00174 |
| 80–257860 | 7/15/80 | 83–02–00174 |
| 80–257903 | 7/15/80 | 84–11–01565 |
| 80–257904 | 7/15/80 | 83–02–00174 |
| 80–257905 | 7/15/80 | 83–02–00174 |
| 80–787266 | 7/15/80 | 83–02–00174 |
| 80–787267 | 7/15/80 | 83–04–00628 |
| 80–787268 | 7/15/80 | 83–02–00174 |
| 80–787269 | 7/15/80 | 83–02–00174 |
| 80–787270 | 7/15/80 | 83–02–00174 |
| 80–787271 | 7/15/80 | 83–04–00628 |
| 80–787273 | 7/15/80 | 83–04–00628 |
| 80–787285 | 7/15/80 | 83–04–00628 |
| 80–787287 | 7/15/80 | 83–04–00628 |
| 81–111969 | 7/15/80 | 83–02–00174 |
| 81–787272 | 7/15/80 | 83–02–00174 |
| K80–787862 | 7/15/80 | 83–02–00307 |
| 80–257948 | 7/16/80 | 83–02–00174 |
| 80–258030 | 7/17/80 | 83–04–00496 |
| 80–258031 | 7/17/80 | 83–02–00174 |
| 80–258033 | 7/17/80 | 82–12–01756 |
| 80–258086 | 7/17/80 | 83–01–00174 |
| K80–258028 | 7/17/80 | 83–02–00307 |
| 80–258064 | 7/18/80 | 83–04–00496 |
| 80–258083 | 7/18/80 | 83–02–00174 |
| 80–257779 | 7/24/80 | 83–02–00174 |
| 80–258487 | 7/25/80 | 82–04–00447 |
| 80–258594 | 7/29/80 | 83–04–00496 |
| 80–728167 | 7/30/80 | 82–05–00769 |
| 80–728193 | 8/4/80 | 82–05–00769 |
| K80–787396 | 8/4/80 | 82–02–00250 |
| K80–787408 | 8/4/80 | 82–02–00250 |
| K80–787425 | 8/4/80 | 82–02–00250 |
| 80–787281 | 8/20/80 | 83–02–00174 |
| K80–787544 | 8/22/80 | 83–02–00307 |
| 80–784547 | 8/25/80 | 83–04–00496 |
| 80–787564 | 8/25/80 | 83–04–00496 |
| 80–787582 | 8/27/80 | 83–02–00174 |
| 80–260054 | 9/2/80 | 83–04–00628 |
| 80–260069 | 9/2/80 | 83–05–00780 |
| K8–1787619 | 9/4/80 | 82–12–01756 |
| K80–260249 | 9/8/80 | 82–12–01756 |
| K80–260453 | 9/8/80 | 83–02–00307 |
| K80–260249 | 9/9/80 | 82–12–01756 |
| K80–260436 | 9/9/80 | 83–02–00307 |
| K80–260449 | 9/9/80 | 82–12–01756 |
| K80–260521 | 9/9/80 | 82–12–01756 |
| K80–787640 | 9/9/80 | 82–12–01756 |
| K80–269549 | 9/10/80 | 82–12–01756 |
| K80–260642 | 9/12/80 | 83–02–00307 |
| K80–260766 | 9/16/80 | 82–12–01756 |
| K81–108706 | 10/3/80 | 82–12–01756 |
| K81–303922 | 10/3/80 | 82–04–00447 |
| K81–303987 | 10/21/80 | 83–02–00174 |
| K81–304008 | 10/21/80 | 82–04–00447 |
| K81–109726 | 10/29/80 | 82–12–01756 |
| K81–109734 | 10/29/80 | 82–12–01756 |
| K81–109936 | 11/3/80 | 83–02–00307 |
| K81–109937 | 11/3/80 | 82–12–01756 |
| 81–153133 | 11/10/80 | 82–05–00769 |
| K81–110286 | 11/12/80 | 82–12–01756 |
| K81–304144 | 11/13/80 | 82–12–01756 |
| K81–304149 | 11/14/80 | 82–04–00447 |
| K81–110512 | 11/18/80 | 82–12–01756 |
| K81–110514 | 11/18/80 | 82–12–01756 |

| Entry No. | Entry date | Original Court No. |
|---|---|---|
| K81–110787 | 11/24/80 | 82–12–01756 |
| K81–304313 | 12/5/80 | 82–04–00447 |
| 81–154492 | 12/10/80 | 82–05–00651 |
| K81–111628 | 12/16/80 | 82–12–01756 |
| K81–111670 | 12/17/80 | 82–12–01756 |
| 81–154775 | 12/19/80 | 83–11–01676 |
| 80–111802 | 12/23/80 | 83–02–00174 |
| 81–111969 | 12/30/80 | 83–02–00174 |
| 81–154776 | 12/30/80 | 82–04–00447 |
| 81–112968 | 1/30/81 | 83–02–00174 |
| 80–257761 | 7/10/81 | 82–04–00447 |

829 F.Supp. 1353

CHUNG LING CO., LTD., ET AL., PLAINTIFFS *v.* UNITED STATES, DEFENDANT, AND NATIONAL KNITWEAR AND SPORTSWEAR ASSOCIATION, DEFENDANT-INTERVENOR

Consolidated Court No. 90–10–00528

(Dated August 11, 1993)

*Sidley & Austin (Judith H. Bello, Alan F. Holmer,* and *Jeremy O. Preiss)* for plaintiff Cheonji Sanup, Inc.

*Grunfeld, Desiderio, Lebowitz & Silverman (Bruce M. Mitchell, David L. Simon,* and *Jeffrey S. Grimson)* for plaintiff *Comitex Knitters, Ltd.*

*Whitman & Ransom (Charles H. Bayar, Dennis James, Jr.* and *Kathleen F. Patterson); Charles Y.W. Chiu,* of counsel, for plaintiff *Chung Ling Co., Ltd.*

*Office of General Counsel,* United States International Trade Commission *(Lyn M. Schlitt,* General Counsel, *James A. Toupin,* Assistant General Counsel, and *Andrea C. Casson),* for defendant.

*Gibson, Dunn & Crutcher (Joseph H. Price, Judith A. Ott, Donald Harrison,* and *Jerry S. Fowler, Jr.)* for defendant-intervenor.

## OPINION

CARMAN, *Judge:* Defendant-Intervenor contests the International Trade Commission's remand results in *Sweaters Wholly or in Chief Weight of Manmade Fibers from Hong Kong, The Republic of Korea, and Taiwan,* USITC Pub. 2577, Views on Remand in Inv. Nos. 731–TA–448–450 (1992) (Remand Determination). Plaintiffs and defendant seek to have the remand determination sustained. The Court retained jurisdiction over this matter during the pendency of the ITC's remand investigation.

## BACKGROUND

In 1990, the ITC determined that an industry in the U.S. was materially injured by reason of imports of certain sweaters. *Sweaters Wholly or*