**Slip-Op 00-134**

**United States Court of International Trade**

```
_____
                               :
Luigi Bormioli Corp., Inc.,    :
                               :
         Plaintiff,            :
                               :
         v.                    :   Court No. 97-09-01554
                               :
United States,                 :
                               :
         Defendant.            :
_____:
```

[Summary Judgment for Defendant.]

Dated: October 19, 2000

Barnes, Richardson & Colburn (Sandra Liss Friedman, Joseph M. Spraragen and Frederic D. Van Arnam, Jr.), for plaintiff Luigi Bormioli Corp., Inc.

David W. Ogden, Assistant Attorney General, Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice (Amy M. Rubin), Chi S. Choy, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of counsel, for defendant.

**OPINION**

**RESTANI, Judge**: This matter is before the court on cross-motions for summary judgment, pursuant to USCIT Rule 56, brought by both plaintiff, Luigi Bormioli Corp., Inc. ("Bormioli"), and defendant, the United States ("Defendant"). Bormioli requests that the court decide, as a matter of law, that the appraised transaction value of the subject merchandise that it imported, glassware from Italy, should exclude the 1.25% charge of one

month's interest.  Defendant cross-moves arguing that the 1.25%

charge is not "bona fide" interest and should be included as part

of the appraisement value of the merchandise.  The court agrees

with the Defendant.

## Jurisdiction and Standard of Review

The court has jurisdiction pursuant to 28 U.S.C. § 1581(a)

(1994).  The court will grant summary judgment if the "pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."  USCIT Rule 56(c).

## Motion to Strike

As a preliminary matter, Bormioli argues that the court

should strike Defendant's "Response to Plaintiff's Statement of

Material Facts as to Which There Are No Genuine Issues to Be

Tried" [hereinafter "Defendant's Response"] from the record

pursuant to USCIT Rule 7.  Contrary to plaintiff's motion,

Defendant's submission does not violate the dictate of Rule 7

that "[n]o other pleading shall be allowed, except that the court

may order a reply to an answer . . . ."   USCIT Rule 7(a).

As a cross-movant for summary judgment, the government is

allowed under USCIT Rule 56(b), (h) to submit two statements of

material facts, one as part of its motion for summary judgment and a second statement of material facts in opposition to Bormioli's statement of material facts. Rule 56(h) requires a party to submit a short statement to controvert those statements of material facts of the plaintiff with which the defendant disagrees. USCIT Rule 56(h) ("All material facts . . . will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.").

In this case, however, it appears Defendant is contesting not the material facts but Bormioli's interpretation of the legal import of those facts. Defendant's Response clarifies that the legal conclusion as to the status of those material facts is critical to the dispute, rather than any particular material facts being at issue. As the Response serves the cause of substantial justice by clarifying the issues, it will not be stricken, assuming a technical defect exists. Cf. <u>Beker Indus. Corp. v. United States</u>, 7 CIT 199, 200-03, 585 F. Supp. 663, 665-67 (1984) (finding that pleading serves substantial justice where defendant's answer complied with the spirit of pleading rules); <u>Transam. Elecs. Corp. v. United States</u>, 70 Cust. Ct. 35, 37-38, 354 F. Supp. 1369, 1371-72 (1973) (finding that pleading serves substantial justice where defendant's answer made a clear

presentation even though it did not format its answer into separate paragraphs). Bormioli's Motion to Strike is DENIED.

## Background

Bormioli is the importer of record for thirteen entries of merchandise in late 1996. Pl.'s Mem. of Law in Support of Mot. for Summ. J. at 3-4 ("Pl.'s Br."). The imported merchandise consists of various articles of glassware purchased by Bormioli from its parent corporation, Luigi Bormioli S.p.A. ("Bormioli Italy"). Pl.'s Statement of Material Facts Not in Dispute Pursuant to Rule 56(i) at ¶ 4. The United States Customs Service ("Customs") appraised the merchandise on the basis of transaction value under 19 U.S.C. § 1401a(b) (1994). Id. at ¶ 5. Customs determined that the transaction value of the imported merchandise was represented by the invoice price plus an additional charge of 1.25% of the invoice price or value as stated therein. Id. at ¶ 6.[1] Bormioli argues that the additional 1.25% charge is interest for one month and should not be included in the transaction value of the imported merchandise.

---

[1] The charge was not reflected in the relevant invoices but was discovered during a Customs audit.

## Discussion

Customs' policies as to the status of the 1.25% charge are found in the Treatment of Interest Charges in the Customs Value of Imported Merchandise, TD 85-111, 50 Fed. Reg. 27,886 (Cust. Serv. 1985) (notice of Customs' position) [hereinafter "TD 85-111"], and the Treatment of Interest Charges in the Customs Value of Imported Merchandise, 54 Fed. Reg. 29,973 (Cust. Serv. 1989) (statement of clarification) [hereinafter "Statement of Clarification"].

Customs promulgated TD 85-111 in order to implement a decision by the Committee on Customs Valuation of the General Agreements on Tariffs and Trade ("GATT").[2] TD 85-111, 50 Fed. Reg. at 27,886. The Statement of Clarification was promulgated to clarify the earlier Treasury Decision. Statement of Clarification, 54 Fed. Reg. at 29,974.[3] The Statement of

_____

[2] The Committee on Customs Valuation was established pursuant to the GATT Agreement on the Implementation of Article VII, adopted during the Tokyo Round of trade negotiations. Article VII of the GATT addressed "Valuation for Customs Purposes." Decisions adopted by the Committee relate to the interpretation and application of particular valuation provisions, the terms of which had been found to be ambiguous when enforced by different nations' customs authorities.

[3] The Statement of Clarification provides, in relevant part, as follows:
    Customs interprets the term "interest" to encompass
    only bona fide interest charges, not simply the notion
    of interest arising out of delayed payment. Bona fide
                                              (continued...)

Clarification does, however, add a new requirement that excludable interest charges be reflected as interest expenses in the importer's books.  Id. at 29,974.

Bormioli argues that the court should not give any deference to Customs' definition of interest as formulated in the Statement of Clarification and that TD 85-111 is not applicable.  See Pl.'s Br. at 18-21, 23-27.  Alternatively, it argues that it satisfies the requirements of TD 85-111.  See Pl.'s Br. at 21-23.  Customs avers that it properly adopted the Statement of Clarification in order to define the term "interest" because TD 85-111 only discusses the criteria according to which interest at a particular rate is deemed excludable from price.  See Statement of Clarification, 54 Fed. Reg. at 29,974; Defendant's Response at 10-13.  Customs further asserts that Bormioli has failed to meet the conditions of TD 85-111.  See Defendant's Response at 18-29.

Because the court rests its decision on the statute and TD 85-111, it need not decide whether the Statement of Clarification merely interprets rather than changes the law in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553(c) (1996),

---

[3](...continued)
interest charges are those payments that are carried on the [importer's] books as interest expenses in conformance with generally accepted accounting principles.
54 Fed. Reg. at 29,974.

or of 19 C.F.R. § 177.10(c)[4] (1999), as alleged by plaintiff.

See Floral Trade Council v. United States, 17 CIT 392, 395, 822

F. Supp. 766, 769 (1993) (distinguishing interpretations from

rules).  As will be demonstrated, the court finds TD 85-111 does

not add new requirements but rather interprets the statute.

The court now addresses what deference, if any, should be

accorded TD 85-111, assuming it is properly issued.  The analysis

of Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467

U.S. 837, 842-43 (1984), has been applied in appraisement cases.

See, e.g., Generra Sportswear Corp. v. United States, 905 F.2d

377, 379 (Fed. Cir. 1990).  The Supreme Court recently found

Chevron analysis equally applicable to regulations affecting

classification decisions.  See United States v. Haggar Apparel

Co., 526 U.S. 380, 386-390 (1999).  Subsequent to the Haggar

decision, the court has ruled that Chevron deference does not

extend to ordinary Customs classification rulings, as they are

not subject to notice and comment procedures.  Marathon Oil Co.

v. United States, 93 F. Supp.2d 1277, 1279 n.2 (Ct. Int'l Trade

2000)(citing Mead Corp. v. United States, 185 F.3d 1304, 1307

(Fed. Cir. 1999), cert. granted, 120 S. Ct. 2193 (U.S. May 30,

2000) (No. 99-1434)).  Customs rulings do not carry the force of

---

[4]  19 C.F.R. § 177.10(c) appears to apply to rates of duty
rather than appraisement issues.

law because they merely interpret and apply Customs law to a specific set of facts.  Id.

In marked contrast to standard Customs rulings, however, TD 85-111 was not issued in response to a specific set of facts arising from a ruling request.  Rather, as previously noted, Customs developed the methodology set forth in TD 85-111 as a generally applicable response to a decision of the GATT Committee on Customs Valuation.

In Genesco Inc. v. United States, 102 F. Supp. 2d 478, 482-84 (Ct. Int'l Trade 2000), the court addressed the level of deference owed a similar general Customs policy statement.  The Genesco court noted that the Supreme Court, in Christensen v. Harris County, had "reject[ed] Chevron deference for policy statements, interpretive rules, agency manuals, and enforcement guidelines lacking the force of law," and had held instead that "interpretations contained in formats such as opinion letters are 'entitled to respect,' but only to the extent that they are persuasive."  Genesco, 102 F. Supp. 2d at 483 (discussing Christensen v. Harris County, 120 S. Ct. 1655 (2000) (citation omitted)).[5]  Recognizing that TD 92-108, the policy statement at

---

[5]  Defendant's Reply Brief did not clarify the Chevron deference discussion in its brief-in-chief to note the refinement of Chevron found in the Supreme Court's recent decision in Christensen.  The government cannot pick and choose which Supreme
(continued...)

issue in Genesco, had been subject to a notice and comment procedure, in contrast to the agency opinion letter in Christensen, the court in Genesco held that TD 92-108 "merit[ed] at least the respect of the court, if not Chevron deference." Id. at 484.

Even if TD 92-108 were entitled to enhanced deference, TD 85-111 is not. As indicated, TD 92-108 was subject to a notice and comment procedure, whereas TD 85-111 was not. Only after the notice and comment procedure, or similar "procedural safeguards," does the presumption of a reasoned and informed articulation of statutory interpretation attach. Mead, 185 F.3d at 1307 (finding Chevron deference inapplicable to Customs classification rulings). Nor is there any other reason to conclude that Congress intended policy statements issued by Customs in the format of TD 85-111 to have the force of law.[6]

---

[5](...continued)
Court cases it will follow.

[6] Although the court concludes that TD 85-111 is not entitled to Chevron deference under a Christensen analysis, the court does not decide whether a similar policy promulgated through adjudication with the attendant procedural safeguards would warrant greater deference than that granted TD 85-111. Cf. INS v. Aguirre-Aguirre, 526 U.S. 415, 416 (1999) (recognizing that Board of Immigration Appeals "should be accorded Chevron deference as it gives ambiguous statutory terms 'concrete meaning through a process of case-by-case adjudication'") (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 448-49 (1987)); Gonzalez v. Reno, 215 F.3d 1243, 1245 (11th Cir. 2000) (declining to give INS
(continued...)

In view of Haggar, which brought tariff statutes within the same regime of statutory interpretation as other statutes, the court sees no reason to interpret Chevron differently depending on the type of decision reviewed. Chevron's meaning should not differ based on whether classification or appraisement is involved. Because the court concludes that in Haggar and Christensen the Supreme Court has refined the rule of Chevron, it also concludes that Generra no longer requires deference to every Customs policy which is not reduced to a regulation, if indeed it ever did so. Generra did not explain why it did not follow in an appraisement case the principles of non-deference previously applicable to classification cases. It simply applied general Chevron principles, rather than any rule of interpretation unique to Customs law. While Chevron deference will be applied in some appraisement cases, it is not appropriate here. Thus, the issue here is whether TD 85-111 properly interprets the statute. If not, the court must determine whether Customs' actions in this case are otherwise a proper application of the statute.[7]

---

[6](...continued) informal adjudication reduced deference under Christensen analysis), cert. denied, 120 S. Ct. 2737 (2000).

[7] Bormioli argues that TD 85-111 does not apply because the phrase "included in the price paid or payable" means that "interest" must be a distinct charge within the price paid or payable. See Pl.'s Br. at 20-21. Bormioli concludes from this

(continued...)

TD 85-111 was prompted by the GATT Committee's decision that interest charges included in price are not to be considered part of the transaction value.  The GATT decision also set forth three criteria to be used in determining whether the interest at the rate charged could be excluded from the transaction value.  See TD 85-111, 50 Fed. Reg. at 27,887.  Section § 1401a(b)(1)(A)-(E) of Title 19 of the U.S. Code, which establishes the exclusive list of additions to the price paid or payable, does not list interest.  See Caterpillar Inc. v. United States, 20 CIT 1169, 1175, 941 F. Supp. 1241, 1246 (1996) (finding that list of mandatory and permissive additions to price actually paid or payable is exclusive).  Our appraisement laws are presumed to be consistent with GATT.  See Federal-Mogul Corp. v. United States, 63 F.3d 1572, 1581-82 (Fed. Cir. 1995) (noting that "absent express Congressional language to the contrary, statutes should not be interpreted to conflict with international obligations" such as GATT agreements).  GATT determinations, while lacking the enforceability of domestic law, should nevertheless not be

---

[7](...continued)
erroneous reading that the "interest" which was charged separately, was not included as distinct charge within the price paid or payable and therefore TD 85-111 does not apply.  Bormioli confuses language describing the GATT decision with the effective language of the TD, which states "whether or not included in the price actually paid or payable."  TD 85-111, 50 Fed. Reg. at 27,886 (emphasis added).  Thus, TD 85-111 does apply.

ignored.  See John H. Jackson, The WTO Dispute Settlement
Understanding – Misunderstandings on the Nature of Legal
Obligations, 91 Am. J. Int'l L. 60, 63-64 (1997) (noting
obligation of Member States under international law to comply
with WTO rulings, notwithstanding limited means of enforcing such
obligation under WTO rules).

TD 85-111 also is consistent with the statutory scheme.
Plaintiff does not argue that TD 85-111 restricts any previous
practice to the detriment of importers.  In fact, if it is a
change, it is likely more favorable.  Nor can it reasonably
contend that this policy statement does much more than require an
importer to show that the disputed charge is really bona fide
interest as opposed to part of the price.  Even without TD 85-111
Customs would have to do something to determine whether the
charge was excludable as interest.  All charges between the buyer
and the seller are presumed to be part of the price paid or
payable.  Generra, 905 F.2d at 379  ("The term 'total payment' is
all inclusive.").

TD 85-111 establishes three criteria that must be met in
order for a charge to qualify as an interest payment at a
particular rate: 1) the interest charge is identified separately;
2) there is a financing agreement in writing; and 3) the buyer
can demonstrate that the goods were sold at the price "actually

paid or payable," and that the claimed rate of interest is the prevailing rate for such transaction in the country where and at the time when the financing was provided.  TD 85-111, 50 Fed. Reg. at 27,886.[8]

First, the court must determine whether the 1.25% charge is identified separately.  See TD 85-111, 50 Fed. Reg. at 27,886. It is clear that the charge at issue was not included in the invoice price.  At least for some entries prior to those at issue, it was referred to on a corporate charge document, which was separate from the sales invoice.  See Charge Document from Bormioli Italy to Bormioli, Christides Aff., Ex. B at 1 (stating "Special [payment] terms 15% interest charges for delayed payment of one [month]").

---

[8]  TD 85-111 provides, in relevant part:
   [I]nterest payments, whether or not included in the price actually paid or payable for merchandise, should not be considered part of dutiable value provided the following criteria are satisfied:
A.  The interest charges are identified separately from the price actually paid or payable for the goods;
B.  The financing arrangement in question was made in writing;
C.  Where required by Customs, the buyer can demonstrate that
--The goods undergoing appraisement are actually sold at the price declared as the price actually paid or payable, and
--The claimed rate of interest does not exceed the level for such transaction prevailing in the country where, and at the time, when the financing was provided.
50 Fed. Reg. at 27,886.

Next, the court must determine if the parties' financing arrangement was reduced to writing.  Bormioli submits a series of three letters that it claims demonstrate a financing agreement exists between itself and Bormioli Italy.  See Letters Between Bormioli and Bormioli Italy, Christides Aff. Ex. A at 1-3.  Each letter sets forth that Bormioli Italy would charge interest at the prime rate in effect in Italy at the time of the delayed payment (more than 60 days from invoice).  Id.  Each interest payment was to be made quarterly.  Id. at 1, 3.  The letters set forth the payment terms that differed with each passing year.  In 1987, Bormioli was required to make payments within 180 days.  Id. at 1.  In 1988, Bormioli was required to make payments within 120 days.  Id. at 2. In 1989, Bormioli was required to make payments within 90 days.  Id. at 3.  Bormioli explains that the change in payment terms reflected its growing financial strength.  Christides Aff. at ¶ 14.

The letters, however, do not reflect the terms of the financing arrangement actually in operation between Bormioli and Bormioli Italy.  First, Bormioli made payments to Bormioli Italy on six to twelve months worth of charges accruing on outstanding invoices, rather than the quarterly payments indicated in the letters.  Id. at ¶ 18.  Second, Bormioli made these late payments at an additional charge of 15% annually, or at a rate of 1.25%

per month, rather than the 11.1% average prime rate of interest in effect in Italy during 1996.[9] <u>Id.</u> at ¶ 20. Finally, most payments made by Bormioli in 1996 did not meet the 90 day payment term set forth in the 1989 letter agreement between Bormioli and Bormioli Italy. <u>See</u> Def.'s Mot. for Summ. J., Ex. 3 at 1. The date of most payments exceeded the 90 extended payment term by between 1 day and 22 days. <u>See</u> <u>id.</u>

Thus, Bormioli did not comply with any of the 3 requirements set forth in the letter agreements. It is difficult to credit Bormioli's claim that this financing agreement covered the arrangements between Bormioli and Bormioli Italy when Bormioli did not comply with any of the terms of the letter agreement, as modified.[10]

---

[9] Italy's average prime rate figures, as reported by Bormioli, were as follows for the years 1992-1996:
    1992 - 14.35%
    1993 - 11.6%
    1994 - 9.58%
    1995 - 10.9%
    1996 - 11.1%
Def.'s Br. at 20-21 (citing Bormioli's Interrogatory Responses).
    Bormioli does not challenge this statement by Defendant, but the interrogatory response was not included as an Exhibit by the Defendant or Bormioli.

[10] Bormioli attempts to explain the apparent discrepancies between its actual arrangements and the letter agreements. It justifies the use of a 15% per year charge by arguing that because the prevailing prime rate in 1987 was 13.58%, the 15% per year charge was commercially reasonable. <u>See</u> Pl.'s Br. at 17-18. This argument is without merit. The terms of the 1987 letter
(continued...)

TD 85-111's final requirement is that Bormioli demonstrate both that the goods at issue were actually sold at the price "actually paid or payable," and that the claimed rate of interest does not exceed the prevailing interest rate in Italy at the time the financing was provided. TD 85-111, 50 Fed. Reg. at 27,886. TD 85-111 further explains that, in order for Bormioli to demonstrate that it sold the goods at issue for the price actually paid or payable, Bormioli must document that the interest and charges are consistent with those applicable to sales of identical or similar merchandise. See id.

Bormioli explains that Bormioli Italy does not sell its merchandise to any other vendors in the United States.

---

[10](...continued)
agreement clearly state that "[t]he rate of interest will be the prime rate here in Italy in effect at the time." Letters Between Bormioli and Bormioli Italy, Christides Aff., Ex. A at 1. The 1987 letter agreement clearly contemplated an interest rate that would change with time. This did not change with the two additional letter modifications. Bormioli itself reported that the average prime rate in 1996 was 11.1% and that it paid 4% above the market. See Def.'s Br. at 20-21. Bormioli does not explain the discrepancy between the average interest rate in 1996 and the interest rate that it paid to Bormioli Italy. Bormioli also does not explain why, over the course of almost 10 years, it would still be paying the same interest rate, if it was indeed an interest charge. Bormioli asserts that the 1987 letter agreement, as modified by the 1989 letter agreement, was in effect in 1996. Christides Aff. at ¶ 15 ("The Financing Agreement, as modified by the December 11, 1987 and June 8, 1989 letters, was in effect at all times in 1996."). As indicated, Bormioli states that its improved financial condition affected the allowed time for payment.

Christides Aff. at ¶ 34.  Therefore, it utilized the prices

charged by Bormioli Italy to an unrelated purchaser in Canada,

Anglo-Canadian M. Co., Ltd. ("Anglo Canadian").  Id.  The prices

are very close, differing at most by five cents, for identical

merchandise, identically packaged.  See Price Comparison of

Anglo-Canadian and Bormioli Invoices, Christides Aff., Ex. I at

1.[11]

Nevertheless, this is insufficient because Congress requires

that comparisons closely approximate either the transaction value

of identical or similar merchandise in sales to unrelated buyers

in the United States, or the deductive value or computed value of

identical or similar merchandise in the United States.  19 U.S.C.

§ 1401a(b)(2)(B).[12]  In Bormioli's case the seller and buyer were

_____

[11]  Defendant claims that the merchandise is not identical
by comparing the prices of similar merchandise that is packaged
differently.  Def.'s Br. at 25-26.  Bormioli, though, explains
that Defendant compared merchandise packaged in retail boxes with
merchandise packaged in brown cartons, thus creating a larger
discrepancy than actually exists.  See Pl.'s Reply Mem., Supp.
Aff. of Jeffrey F. Christides at ¶¶ 6-13.

[12]  Section 1401a(b)(2)(B) of Title 19 provides, in relevant
part, as follows:
      The transaction value between a related buyer and seller
is acceptable for the purposes of this subsection . . . if the
transaction value of the imported merchandise closely
approximates --
      (i)  the transaction value of identical merchandise, or of
similar merchandise, in sales to unrelated buyers in the United
States; or
      (ii) the deductive value or computed value for identical
                                                  (continued...)

related, and the statute makes no exceptions for comparisons to sales of identical merchandise <u>outside</u> the United States. <u>See</u> 19 U.S.C. § 1401a(f)(2)(E) (1994).[13] Thus, Bormioli has failed to demonstrate that substantially identical or similar goods were sold to another purchaser at the price actually paid or payable.

Bormioli also fails to establish that the alleged 1.25% monthly charge (15% annually) does not exceed the interest rate prevailing in Italy at the time the financing was provided. <u>See</u> <u>TD 85-111</u>, 50 Fed. Reg. at 27,886. The court notes that Bormioli has failed to provide a prevailing interest rate in Italy other than the prime rate. To determine whether the interest rates charged Bormioli satisfy the final condition of TD 85-111, therefore, without documentation establishing the prevailing interest rate in Italy, the court compares Bormioli's interest rate to the Italian prime rate for the relevant years.

---

[12](...continued)
merchandise or similar merchandise;
but only if each value referred to in clause (i) or (ii) that is used for comparison relates to merchandise that was exported to the United States at or about the same time as the imported merchandise.

[13] Section 1401a(f)(2)(E) of Title 19 provides, in relevant part, as follows:
    Imported merchandise may not be appraised . . . on the basis of --
        . . .
        (E) the price of merchandise for export to a country other than the United States . . . .

Bormioli claims that the 15% interest rate charged by Bormioli Italy was reasonable because that interest rate was the best interest rate that a small start-up company could expect to receive in 1987. See Pl.'s Br. at 17-18. It claims that the prime rate in Italy at the time of the financing was 13.58%. Id. at 17. *The Financial Times* reported that the prime rate at the beginning of the year, when the 1987 letter agreement was signed, was at 13%. David Lane, Lending Ceilings Bring a Note of Caution, Fin. Times, Nov. 17, 1987, at Survey VIII. Bormioli Italy charged Bormioli a full 1.5-2% higher than the prime rate in 1987. By 1996, this gap had widened to 4%, but the rate Bormioli Italy charged Bormioli never changed. See 1996 Italian Prime Rate Report, *available at* Bloomberg Fin. News Serv., Code ITBRPRIM (documenting an average prime rate of 11.069% in 1996). In the absence of evidence showing a prevailing interest rate other than the prime rate, plaintiff fails to meet TD 85-111's requirement that the interest rate charged Bormioli be less than the prevailing interest rate in Italy at the time of the financing, whether in 1987 or 1996.

Bormioli only meets one of the three requirements set forth in TD 85-111, namely, that the alleged interest charge was separately listed. See TD 85-111, 50 Fed. Reg. at 27,886. Further, Customs must have some way of making determinations as

to whether extra charges are interest or simply late or other charges unrelated to prevailing interest rates.[14]  Requiring an importer to show that the charge was made pursuant to some agreement calling for a reasonable rate of interest is well-nigh a necessity.  Whether Bormioli can be required to do anything else, it can be required to do this with or without TD 85-111. It failed this simple step.  Thus, the court determines that the facts alleged by Bormioli do not demonstrate that the charges at issue are <u>bona fide</u> interest charges.  Accordingly, they are found to be part of the price paid or payable.

---

[14]  The court draws no conclusion as to Bormioli's motives, but Customs cannot allow loopholes in which the less than attentive or dishonest may hide components of the actual price. <u>See</u> <u>Tikal Distrib. Corp. v. United States</u>, 93 F. Supp. 2d 1269, 1271-72 (Ct. Int'l Trade 2000) (second set of invoices, not filed with entries, included, <u>inter alia</u>, charges for exclusive selling rights).

## Conclusion

For the reasons contained herein, the court GRANTS Defendant's Motion for Summary Judgment and DENIES Bormioli's Motion for Summary Judgment.

 

_____
Jane A. Restani
JUDGE

Dated:    New York, New York

October 19, 2000