Slip Op. 03-107

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____
: 
SKECHERS U.S.A., INC.,           :
: 
        Plaintiff,        :
: 
        v.            :          Consol. Court No. 98-03245
: 
UNITED STATES,        :
: 
        Defendant,       :
: 
_____:

[Defendant's motion for summary judgment granted in part, denied in part.]

Dated: August 19, 2003

Law Offices of Elon A. Pollack (Elon A. Pollack) for plaintiff.

Peter D. Keisler, Assistant Attorney General, John J. Mahon, Acting Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Amy M. Rubin), Beth C. Brotman, Office of Assistant Chief Counsel, International Trade Litigation, Bureau of Customs and Border Protection of the United States Department of Homeland Security, of counsel, for defendant.

## OPINION

**RESTANI, Judge:**

This matter is before the court on a motion for summary judgment pursuant to USCIT Rule 56(c) brought by defendant, the Bureau of Customs and Border Protection of the United States Department of Homeland Security ("Customs"). Customs asks the court to decide, as a matter of law, that plaintiff Skechers U.S.A., Inc. ("Skechers"), failed to prove that its claimed

interest payments made on imported footwear were bona fide. In the alternative, Customs requests that the court decide, as a matter of a law, that Skechers failed to satisfy statutory and regulatory requirements for interest charges to be non-dutiable.

## FACTUAL AND PROCEDURAL BACKGROUND

Skechers is a California-based importer, and the exclusive U.S. distributor, of "Skechers" brand footwear. The majority of its products are manufactured in the People's Republic of China and are shipped to the United States from Hong Kong through the port of Los Angeles.

The company was founded in 1992 and often "financed" its footwear purchases through a combination of letters of credit and delayed payments. According to Skechers, it would typically enter into oral financing agreements with its suppliers whereby Skechers was to pay an "interest" fee every time it deferred full payment on the applicable invoices. In most cases the "interest" rate was 2% of the transaction amount and allegedly reflected the prime rate of the suppliers' home countries (Taiwan and Hong Kong) at the time of each transaction, plus rate increases attributable to factors such as the short-term nature of the financing and Skechers's absence of domicile and assets in those countries. See Pl.'s Opp'n Def.'s Mot. Summ. J. at 10–12. The applicable rate for the unsecured "loans" would be effective for the first 30, 45, 60, or 90 days depending on the supplier, and Skechers agreed to negotiate additional interest and penalties for payments made after the initial financing periods. See Supplemental Decl. of Douglas Parker ("Supp. Parker Decl.") ¶ 12 & Ex. A (producing written financing agreements for most of Skechers's suppliers). According to Skechers, it operated under oral financing agreements with its suppliers for up to two years before they were memorialized in formal written financing agreements. See Pl.'s Opp'n Def.'s Renewed Mot. Summ. J. at 9.

2

Since 1995, Customs has been appraising Skechers's entries at "transaction value" as set forth in 19 U.S.C. § 1401a(b) (1994) (describing appraisal methods). For each of Skechers's entries, Customs determined that the transaction value of the imported footwear was the invoice price plus the claimed interest charge. Skechers has filed numerous protests with Customs since that time, claiming, among other things, that the charges were not dutiable under § 1401a because they constituted interest payments. Customs denied the protests based on its conclusion that Skechers had not complied with the statute and applicable regulatory guidance.

Skechers appealed the protest denials to the Court of International Trade, claiming that the finance charges were exempt from duty pursuant to the statute. As such, Skechers requested a refund of those duties charged plus interest. Customs responded that the charges did not constitute bona fide interest payments within its interpretation of the statute and Generally Accepted Accounting Principles ("GAAP"), adding that its statutory interpretation is entitled to deference under Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944) (holding that an agency's interpretation may be entitled to some deference based on its "power to persuade"). Customs also argued that Skechers had failed to comply with the statute and the applicable regulatory guidance, citing Luigi Bormioli Corp. v. United States, 118 F. Supp. 2d 1345 (Ct. Int'l Trade 2000) (granting summary judgment in favor of Customs where importer failed to prove that payments in dispute were bona fide interest payments as defined by Customs's interpretation of § 1401a), aff'd, 304 F.3d 1362 (Fed. Cir. 2002).

The court declined to rule on the government's first motion for summary judgment because of the parties' disputes as to which fact patterns were at issue, and ordered the expansion

of the test case to make it meaningful.[1]  Order of Feb. 8, 2002.  This gave Plaintiff a second shot at making its factual presentation coherent.[2]

On March 21, 2003, the court issued an order indicating that Skechers had failed to comply with the court's February 2002 order requiring it to submit a "full package of evidence" demonstrating satisfaction of Customs's guidelines as interpreted from § 1401a.  The court ordered Skechers to prepare a detailed chart relating the evidence with each entry or face a default judgment.  Skechers filed a chart on April 18, 2003, that contains, among other things, a list of every entry number in dispute and related information on Skechers's manufacturers and suppliers, invoice issue dates, and claimed interest amounts paid.  The chart also purports to itemize where the court can find evidence that Skechers satisfied the applicable regulatory requirements, see Discussion infra, to prove that its claimed interest charges should not be included in transaction value under § 1401a.

The chart, however, does not fully comply with the court's order.  It often contains inaccurate or misleading information, or fails to direct the court to the supporting evidence altogether.[3]  Significantly, while the chart lists the invoice date and the rate of interest for each

_____

[1] The court designated this matter a test case and suspended related court actions pending final decision herein on December 21, 2000.  The test case included fourteen entries from 1997.  The court designated Court No. 99-11-00697 (26 entries from 1998) and Court No. 00-09-00456 (61 entries, most in 1999) as additional test cases and consolidated them with Court No. 98-03245 on September 25, 2002.

[2] Plaintiff's counsel repeatedly has requested a trial, but plaintiff cannot get to trial unless it demonstrates that it will present evidence to sustain its claim.

[3] For example, the chart does not indicate where the court can find evidence of a written financing agreement between Skechers and supplier Lusung Shoe.  See Pl.'s Chart of Evidence,

(continued...)

4

entry, the chart itself does not indicate, for <u>any</u> of Skechers's entries, <u>when</u> those interest payments were made or what the agreement terms were.  Because the chart does not reveal the length of the delay between the invoice issue date and the date of the interest payments, it is impossible for the court to determine whether the amount paid complied with the terms of Skechers's financing agreements.[4]  As discussed <u>infra</u>, Skechers provides supporting documentation on payment dates for only three of the 101 entries at issue in this consolidated test case.

The chart reveals 14 entries covered by the original Court No. 98-12-03245 test case.  For

---

[3](...continued)
Entry Nos. 175-0336827-0, 175-0337349-4, 175-0754925-5, 175-0755226-7, 175-0755389-3, and 175-0755403-2.  Nor is such direction provided for suppliers Pacific Footgear, see id. Entry Nos. 175-0755224-2, 175-0755509-6, 175-0755709-2, 175-0755587-2, and 175-0755492-5; Hwashun/Morgan International, see id. Entry Nos. 175-0753338-2 and 175-0754143-5; Luxfull/Lux S.R.L., see id. Entry No. 175-0348188-3; Shoe Biz, see id. Entry No. 175-0755605-2; and Long Shoe, JJL Fashion, and Pacific Footwear, <u>see id.</u> Entry No. 175-0347665-1.  Evidence of written financing agreements is crucial to Skechers case under Customs's regulatory guidance but is not provided for any of these suppliers.  For Entry No. 175-0347665-1, the chart also fails to show where the court can verify that the goods at issue were actually sold at the price declared as paid or payable, another regulatory requirement for proving that interest payments are non-dutiable, for Long Shoe, JJL Fashion, and Pacific Footwear.

The exhibits also reveal discrepancies between the interest payments as documented by the evidence and the interest payments as claimed by the chart.  For example, for Entry No. 175-0347510-9 (Asia Billion, 2/7/98), 1.5% interest was paid although the chart claims that 0% interest was paid.  Similarly, for Entry No. 175-0754362-1 (Enble/Reflex, 3/18/99), the interest payment was 2%, but the chart claims 1.4% in interest paid.  Finally, for Entry No. 175-0755694-6 (Schaefer, 6/10/99), Skechers's actual interest payment was 1.5% of the financed amount, though the chart claims that Skechers paid 0.7% of the total invoice price.

[4] The chart does reveal that, in practice, Skechers's interest payments amounted to a flat rate of 2% of the invoice amount for just over half the transactions at issue.  Within the 101 entries at issue are 114 payment transactions.  Of these 114 transactions, the chart itemizes 62 occurrences of 2% in interest paid, 35 occurrences of 1.5% in interest paid, 5 occurrences of 1%, 2 occurrences of 1.2%, 1 occurrence of 1.4%, 1 occurrence of 0.7% , and 8 occurrences of 0% or no interest paid.  <u>See</u> Pl.'s Chart of Evidence.  This information, however, is not meaningful without proof of the terms of each financing agreement and the corresponding payment dates.

those entries where interest payments were made, the interest amount paid by Skechers is consistently stated to be 2%. Written financing agreements existed between Skechers and these suppliers/manufacturers at the time of entry,[5] and the agreements each set forth a rate of interest "up to 2% of the invoice price per month up to 90 days" with the potential for higher interest rates and penalties for payments made past 90 days. See Decl. of William Liao Ex. A; Supp. Parker Decl. Ex. A. Skechers, however, provides no information regarding when its invoice payments were made, rendering it impossible to determine whether Skechers complied with the terms of its agreements for these entries.

Of the 26 entries covered by the Court No. 99-11-00697 test case, there are 14 entries where the financing agreements purporting to govern the transactions post-date the corresponding invoice issue dates, which means that the court cannot verify the precise terms that governed these transactions.[6] Another nine entries are ostensibly governed by written agreements that were in place at the time of entry,[7] but Skechers again fails to provide information regarding when payment for these nine entries were made, making it impossible to determine whether the agreement terms were followed. The remaining three entries are discussed infra.

---

[5] Skechers did not have written financing agreements at the time of entry, and did not pay interest to, two suppliers included in the original test case: Lusung Shoe and Reflex Corporation of America (parent corporation to Dar Shyong and Enble/Enable Enterprises). See id.; Supp. Parker Decl. Ex. A.

[6] The 14 entries without written agreements in place at the time of import are for suppliers Reflex, Asia Billion, and Hopeway/Diamond Group. Evidence of written financing agreements does not exist for suppliers Luxfull/Lux S.R.L., Long Shoe, JJL Fashion, and Pacific Footwear; Skechers, however, does not claim to have paid interest to these suppliers.

[7] This includes most entries by suppliers Easy Dense, Miri, and Shing Tak.

Of the 61 entries covered by the Court No. 00-09-00456 test case, there are 20 entries where the agreed-upon interest rates, as evidenced by the financing agreements, differ from the interest payments claimed by Skechers in the chart.[8] This could be attributable to payments made after the initial "loan" period, but Skechers provides no evidence of such. An additional six entries listed in the chart feature transactions that were not governed by written financing agreements.[9] For another 12 entries, Skechers provides no formal documentation whatsoever to prove that it had written agreements with these suppliers (all Hwashun/Morgan International, Lusung Shoe, Pacific Footgear, and Shoe Biz entries). For the remaining entries, Skechers provides proof of the applicable interest rates and lists interest payments made on the chart, but once again fails to provide information regarding when those payments were made, making it impossible to determine whether Skechers adhered to the agreement terms. In fact, for none of the 61 entries does Skechers provide sufficient information that would allow the court to verify compliance with its written agreements.

As illustrated, for the vast majority of the entries mentioned herein, adequate payment details cannot be found from the evidence supplied by Skechers, making verification of its adherence to agreement terms impossible. Examining the evidence as directed by the chart

---

[8] Of the 20 entries, four are for supplier Easy Dense (where the paid interest was 1.5% and agreed-upon rate was 0.75% per month), six are for Evergo (where paid interest was 2% and agreed-upon rate was 1.33% per month), one for Enble/Reflex (1.4% paid, 1.33% per month agreed-upon rate), one for Dar Shyong/Reflex (2% paid, 1.33% per month agreed-upon rate), one for Allied Jet (1.5% paid, up to 1% per month agreed-upon rate), six for Hopeway/Diamond Group (1.5% paid, 1.33% per month agreed-upon rate), and one for supplier Shaefer (0.7% paid according to the chart, 1.5% per month of the financed amount was agreed-upon rate). See Pl.'s Chart of Evidence.

[9] Of these, four are for supplier Asia Billion, and suppliers Dar Shyong/Reflex and Evergo each had one entry that was not subject to a written financing agreement. See id.

reveals complete payment details for only three entries, all of which are covered by Court No. 99-11-00697. See Pl.'s Chart of Evidence, Entry Nos. 175-0347530-7 (Easy Dense, 2/16/98; 2% interest paid after 45 days; up to 2% per month up to 90 days is the agreed-upon rate), 175-0347512-5 (Miri, 2/11/98; 1.5% interest paid after 50 days, up to 2% per month up to 90 days is the agreed upon-rate), and 175-0347726-1 (Shing Tak, 3/3/98; 2% interest paid after 44 days; up to 2% per month up to 90 days is the agreed upon rate).

In sum, there is no evidence that Skechers strictly adhered to its agreements for any of the entries at issue.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(a). The court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT Rule 56(c).

## DISCUSSION

The "transaction value" of imported merchandise is defined as the "price actually paid or payable for the [imported] merchandise" plus any "packing costs" or "selling commission incurred by the buyer with respect to the imported merchandise," the "value, apportioned as appropriate, of any assist," any "royalty or license fee related to the imported merchandise that the buyer is required to pay, directly or indirectly, as a condition of the sale of the imported merchandise," and "the proceeds of any subsequent resale, disposal, or use of the imported merchandise that accrue, directly or indirectly, to the seller." 19 U.S.C. § 1401a(b). Although

the statute does not expressly include or exclude interest payments as part of the transaction value, Customs regards interest payments as being non-dutiable and expressed this policy in Treasury Decision 85-111. See Treatment of Interest Charges in the Customs Value of Imported Merchandise, 19 Cust. B. & Dec. 258 (1985), 50 Fed. Reg. 27,886 (Customs Serv. July 8, 1985) [hereinafter "TD 85-111"]; see also Treatment of Interest Charges in the Customs Value of Imported Merchandise, 54 Fed. Reg. 29,973 (Customs Serv. July 17, 1989) [hereinafter "Statement of Clarification"].

TD 85-111 interprets § 1401a and was promulgated by Customs to implement a decision by the Committee on Customs Valuation of the General Agreements on Tarriffs and Trade. TD 85-111 provides four criteria for interest charges to be non-dutiable (part (c) contains the last two requirements):

> Charges for interest under a financing arrangement entered into by the buyer and relating to the purchase of imported goods shall not be regarded as part of the customs value provided that:
>
> (a) The charges are distinguished from the price actually paid or payable for the goods;
>
> (b) The financing arrangement was made in writing;
>
> (c) Where required, the buyer can demonstrate that
>
> --Such goods are actually sold at the price declared as the price actually paid or payable, and
>
> --The claimed rate of interest does not exceed the level for such transactions prevailing in the country where, and at the time when the finance was provided.

TD 85-111, 50 Fed. Reg. at 27,886. Customs issued a Statement of Clarification to clarify TD 85-111. See Statement of Clarification, 54 Fed. Reg. at 29,974 ("Interest . . . encompass[es] only bona fide interest charges, not simply the notion of interest arising out of delayed payment. Bona

9

fide interest charges are those payments that are carried on the importer's books as interest expenses in conformance with generally accepted accounting principles."). Without addressing the Statement of Clarification, Bormioli upheld TD 85-111 as a reasonable method of determining if interest is bona fide and non-dutiable. See Bormioli, 118 F. Supp. 2d at 1350, aff'd, 304 F.3d at 1368–69.

Therefore, at the very least, the importer must establish that the claimed interest charges meet the four requirements set forth in TD 85-111, failing which summary judgment is appropriately granted in Customs's favor. See Bormioli, 304 F.3d at 1372–73. In the instant case the government concedes that the claimed interest charges were separately identified from the price paid or payable and that the claimed interest rate did not exceed TD 85-111's specifications. See Def.'s Mem. in Support Mot. Summ. J. at 18; see also Def.'s Supp. Mem. in Support Renewed Mot. Summ. J. at 5. The government argues that, as an initial matter, the charges do not meet a threshold for analysis under TD 85-111. Thus, the issues before the court are whether the charges may be analyzed under TD 85-111 and, if so, whether Skechers met the requirements that the financing agreements be in writing and that the goods were actually sold at the declared price.

## A.     Whether the Finance Charges are "Bona Fide Interest"

Customs maintains that the claimed finance charges are not bona fide interest payments, but rather flat fees that Skechers paid in return for a delayed payment schedule regardless of when it paid its invoices in full. Therefore, Customs asserts, the payments do not conform to any

accepted definition of "interest"[10] and are thus outside the scope of TD 85-111 and the Statement of Clarification.

Skechers counters that the payments are "bona fide" for several reasons. First, the charges were bona fide because they were carried as interest expenses on Skechers's books in accordance with GAAP, as required by the Statement of Clarification. Skechers's independent certified public accountant, KPMG, certified the books as such. See Supp. Parker Decl. Exs. B & C (providing independent auditors' reports and internal accounting documents that separately list interest charges paid to each of Skechers's suppliers). Second, interest rates and payment terms varied with each supplier. Third, the written agreements refer to the payments as interest. Finally, Skechers points out that where invoices were covered in part by cash or letter of credit, interest was only charged for the unpaid balance. See, e.g., Supp. Parker Decl. ¶ 10 & Ex. A. Thus, Skechers maintains, the payments at issue are non-dutiable bona fide interest payments.

The Statement of Clarification requires only that the charges be carried as interest expenses on the importer's books in conformance with GAAP. Skechers has established this through its auditor's certification and internal accounting documents. Customs does not challenge this evidence and instead argues that a criterion not required by the Statement of Clarification, i.e., that the interest charges must be other than "flat fees," has not been fulfilled.[11]

---

[10] See Lightbulb Online Dictionary of Financial Terms, Lightbulb Press, Inc. (2003), at http://www.lightbulbpress.com/onlinedictionary/onlinedictionary.html ("Interest is the cost of using the money provided by a loan, credit card, or line of credit, usually expressed as a percentage of the amount you borrow and pegged to a specified period of time."); see also BLACK'S LAW DICTIONARY 818 (7th ed. 1999) (defining "interest rate" as "[t]he percentage that a borrower of money must pay to the lender in return for the use of the money").

[11] The written agreements at issue may reflect more than simply "flat fees." Whether
(continued...)

Customs has published reasonable tests for determining whether "interest" is bona fide and non-dutiable. The court has upheld TD 85-111 and the test of the Statement of Clarification is not in dispute. Consequently, Customs's additional criterion is precluded by its own regulatory guidance. These issues are not easy and importers are entitled to a non-moving target.

## B.     The TD 85-111 Requirements

As indicated, Customs alternatively argues that Skechers has not met all of the TD 85-111 criteria. The Court of Appeals for the Federal Circuit, in affirming this court, noted that the criteria are conjunctive, i.e., all four have to be met for interest charges to be non-dutiable. Bormioli, 304 F.3d at 1373. As discussed above, the court need only address the TD's requirements that the financing agreements be in writing and, if this requirement is met, that the goods were actually sold at the declared price.

Bormioli holds that while Customs may ignore de minimis variations from the terms of a written financing agreement, if parties repeatedly stray from its salient terms, then the written agreement requirement in TD 85-111 is not met. Bormioli, 304 F.3d 1372 (finding that the importer failed to satisfy the written financing agreement requirement when importer acknowledged departing from the terms of its agreements with its suppliers). "TD 85-111 does not merely require that the parties have a written financing arrangement, but that the written financing arrangement actually govern the payments at issue." Id.

To illustrate that it satisfied the written financing agreement requirement, Skechers submits photocopies of its written financing agreements for most of its suppliers. See Supp.

---

[11](...continued)
Skechers complied with the agreements is another issue.

Parker Decl. Ex. A. Skechers also provides declarations by officers from several of its suppliers asserting that they had oral financing agreements with Skechers that were memorialized approximately two years later.[12] Skechers points out that nowhere in the statute, TD 85-111, the Statement of Clarification, or other Customs guidelines, is there a prescribed format for the written agreement. Skechers concludes that this evidence satisfies the written financing agreement requirement and alternatively claims that any ambiguity in its agreements gives rise to genuine issues of material fact that make this case inappropriate for summary judgment.

Putting aside the argument that no format for the written financing agreement requirement exists, the question is whether an objective examination of the evidence indicates that Skechers sufficiently departed from the terms of its agreements so that the written financing agreement requirement was not met. As discussed above, Skechers has only provided evidence which potentially supports its claim for three entries. See Pl.'s Chart of Evidence, Entry Nos. 175-0347512-5 (Miri, 2/11/98), 175-0347530-7 (Easy Dense, 2/16/98), and 175-0347726-1

---

[12] Because Skechers claims to have had oral financing agreements with several of its suppliers before those agreements were memorialized, Skechers argues that there is a material issue of fact as to when the agreements were reached. Skechers insists that the written financing agreements should apply retroactively to the earlier transactions. This is an invitation to fraud. A written financing agreement must be in place when the goods are sold because it must govern the payments at issue. Bormioli, 304 F.3d at 1372.

Skechers also contends that, at a minimum, the written agreements should be held applicable to transactions that occurred after the agreement had been set forth in writing even if both parties had not had a chance to sign them. Skechers presents evidence to support this theory for suppliers Asia Billion (affiliated with Dah Lih Puh Co.) and Reflex Corporation. See Supp. Parker Decl. Ex. A. Skechers adds that past Customs Headquarters rulings concur with this analysis as does California contract law, which the parties deemed to be controlling by agreement. Because the court concludes, however, that Skechers has failed to provide enough information (specifically, payment dates) for the entries mentioned herein to prove that it either had written agreements or that it actually complied with their terms, it is not necessary to address the issue of whether some of the written agreements should apply retroactively.

(Shing Tak, 3/3/98). For the three entries for which the agreed-upon interest rate, the invoice issue date, the payment date, and the amount paid are all provided, there is some question as to whether the payments should be found to be consistent with the written agreements. For each of the three entries, the agreed-upon interest rate was "up to 2% of the invoice price per month up to 90 days." Skechers, however, paid the 2% interest charge on the Easy Dense shipment 45 days after the invoice date. Skechers paid Shing Tak 2% of the invoice amount 44 days after the invoice issue date. Finally, Skechers paid Miri a 1.5% interest fee 50 days after invoice issue date.

For all of the remaining entries, Skechers failed to provide enough information for Customs, or the court, to determine whether Skechers complied with the terms of its written financing agreements.[13] Thus, Skechers failed to prove that it satisfied the requirement that it's financing agreements were made in writing in compliance with TD 85-111, except perhaps as to Entry Nos. 175-0347512-5, 175-0347530-7, and 175-0347726-1. As to these three entries, a material issue of fact exists as to whether the time of payment represents a material change from the financing terms and whether the alleged interest payments qualify as "interest" under applicable published guidance.[14]

The government's arguments that the goods were not actually sold at the price declared as

---

[13] As discussed in the Facts section, many entries suffer from other evidentiary deficiencies. A substantial number of entries showed discrepancies between the agreed interest rates and the payments claimed by Skechers. Skechers provides no evidence of written financing agreements with several suppliers. Finally, many entries preceded the effective dates of the applicable financing agreements, taking these transactions outside TD 85-111. See supra n.12.

[14] Although Skechers has not submitted evidence of the non-materiality of the deviations, the government has not addressed this issue directly in its motion. Thus, summary judgment on these entries is not appropriate at this juncture.

the price paid or payable relate to the status of the "interest" charges under the arguments addressed previously and cannot be further disposed of at this stage.

## CONCLUSION

Except for the three entries mentioned above, the court finds that Skechers has failed to present evidence that its financing arrangements satisfied the written financing agreement requirement in TD 85-111.  Customs's motion for summary judgment is granted in part and the parties are instructed to attempt to resolve this matter and report to the court in fifteen days as to whether mediation is desired.

_____

Jane A. Restani
JUDGE

Dated: New York, New York

This 19th day of August, 2003.