Slip Op. 01- 53

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| BOUSA, INC. (f/k/a BULK OIL (U.S.A.) INC.), | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | **Before: MUSGRAVE, JUDGE** |
|  | : |  |
| UNITED STATES, | : | Court No. 90-12-00658 |
|  | : |  |
| Defendant. | : |  |

[Defendant's motion for partial summary judgment denied and Plaintiff's cross-motion for partial summary judgment denied.]

Dated: April 26, 2001

*Herbert Peter Larsen*, for Plaintiff.

*Stuart E. Schiffer*, Acting Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*John J. Mahon*); *Edward N. Mauer*, Office of Assistant Chief Counsel, United States Customs Service, of counsel, for Defendant.

**OPINION**

This matter is before the Court on cross-motions for partial summary judgment pursuant to CIT Rule 56. At issue is whether Defendant, the United States Customs Service ("Customs"), correctly classified an entry of a petroleum product as "Motor Fuel" under item 475.25 of the Tariff Schedules of the United States ("TSUS") with a duty at the rate of $0.0125 per gallon.[1] Plaintiff,

---

[1] A total of eleven entries are at issue in this action, but the motions now before the Court pertain only to one entry, number 458-0000104-7. The parties state that resolution of the legal issue presented in connection with number 458-0000104-7 "is expected to affect the substantive classification issues in the other entries remaining in this action." Stipulation ¶ 3.

BOUSA, Inc. ("BOUSA"), contends that the merchandise should have been classified under item 475.65 TSUS as "Mixtures of hydrocarbons not specifically provided for, derived wholly from petroleum, shale oil, natural gas, or combinations thereof, which contain by weight not over 50 percent of any single hydrocarbon compound:  In liquid form" with a duty at the rate of $0.0025 per gallon.  The parties stipulate that if the merchandise is not classifiable under item 475.25 TSUS, then it should be classified under item 475.65 TSUS.  For the reasons which follow, the Court concludes that factual issues regarding the chief use of the merchandise remain unresolved; therefore both motions must be denied.

### *Jurisdiction and Standard of Review*

The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1581(a).  Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  CIT Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Although 28 U.S.C. § 2639(a)(1) extends a presumption of correctness to Customs' classification decisions, this presumption "is irrelevant where there is no factual dispute between the parties."  *Rollerblade Inc. v. United States*, 112 F.3d 481, 484 (Fed Cir. 1997) (citing *Goodman Manufacturing, L.P. v. United States*, 69 F.3d 505, 508 (Fed. Cir. 1995)); *accord Universal Electronics, Inc. v. United States*, 112 F.3d 488, 492-93 (Fed. Cir. 1997).

### *Background*

Central to the arguments presented by both parties is the 1986 Standard Specification for Automotive Gasoline ("D 439") issued by the American Society for Testing and Materials

("ASTM").  In Treasury Decision ("TD") 83-173, Customs announced that "[c]lassification of an

imported petroleum product as a motor fuel under item 475.25, TSUS, would be indicated if it can

be satisfactorily demonstrated to Customs that the product meets . . . D439 . . . ."  Under D 439,

automotive gasolines are categorized based on their volatility, with Class A being the least volatile

and Class E being the most volatile.[2]  The parties state that "[o]ne significance of determining which

volatility class or classes a product fits into for purposes of D 439 is that the volatility impacts when

and where a product may be used."  Stipulation ¶ 10.  D 439 also specifies applications for different

gasolines based on their antiknock index ("AKI").[3]  A product's AKI is based on the average of the

results from two different octane tests.  *See* Stipulation ¶ 32.  The higher a product's AKI, the more

resistant it is to knock.  *See* Stipulation ¶ 11.  Eighty-seven (87) AKI gasoline is required by "most

---

[2]  Paragraph 7 of the Stipulation states that:

> "Volatility" is a term that encompasses a group of characteristics impacting the ability of a liquid fuel to turn into vapor for proper ignition in an automotive engine under a wide range of conditions. Generally speaking, the colder the weather, whether by reason of the season or the altitude, the higher the volatility class, and the greater the volatility, of the gasoline should be.

[3] Regarding the antiknock requirement, the parties explain that:

> "The fuel-air mixture in the cylinder of a spark-ignition engine will, under certain conditions, autoignite in localized areas ahead of the flame front that is progressing from the spark.  This may cause an audible 'ping' or knock." . . . For any given engine, the tendency to autoignite is greater at higher ambient air temperatures and pressures. The antiknock requirements of a given engine are lower in colder weather, and at higher elevations where the air pressure is lower. Thus, the locality and season affect the antiknock requirements of a given engine.

Stipulation ¶ 11 (citation omitted).

1971 and later model vehicles," but 85 AKI gasoline may be used in "vehicles with low antiknock requirements". Stipulation ¶ 12. Furthermore, reductions in antiknock requirements are allowed for certain seasons and altitudes, permitting 85 AKI gasolines to be used for 87 AKI applications. *See* Stipulation ¶ 31, 34-35.

The merchandise at issue, approximately 274,983 barrels of a petroleum product of Romanian origin, was entered into the United States on November 3, 1986, via the port of Bayonne, New Jersey. At the time of entry, BOUSA hired an independent company to perform various tests on the merchandise relevant to the D 439 standard. The parties agree on the following summary of the test results:

> [T]he merchandise cannot be a Volatility Class E automotive gasoline . . . . However, first, the merchandise does satisfy the D 439 requirements for an unleaded 85 AKI automotive gasoline . . . of Volatility Class A, B, C, or D. As such, it satisfies the D 439 requirements throughout the country throughout the year, except in the northern half of the country during the coldest part of the winter [when only Class E fuel is acceptable]. Second, the merchandise satisfies the ASTM D 439 requirements for an 87 AKI unleaded gasoline of Volatility Class A, B, C, or D gasoline year round in the western Great Plains and Rocky Mountains . . ., except that it does not satisfy the requirements in portions of these areas during the coldest part of the winter. The merchandise also satisfies ASTM D 439 requirements for . . . 87 AKI unleaded gasoline in December and January in an area of the central Great Plains states stretching from Big Bend, Texas to north-eastern Nebraska . . . .

Stipulation ¶ 36.

## Discussion

### I. Customs' Motion for Partial Summary Judgment

Customs argues that the merchandise at issue was properly classified as "Motor Fuel" because TD 83-173 adopted D 439 as the standard for determining classification as "Motor Fuel"

under 475.25 TSUS, and because the merchandise satisfies D 439 for certain volatility classes and applications. In analyzing this argument, the Court first considers what deference TD 83-173 should receive. Pursuant to *Christensen v. Harris County*, 529 U.S. 576 (2000), if an agency interpretation is promulgated in a manner which lacks the force of law, it is not entitled to deference under the analysis set forth in *Chevron U.S.A. Inc. v. Natural Resources Defense Counsel, Inc.*, 467 U.S. 837 (1984), but it is given respect "to the extent that [it has] the 'power to persuade'". *Christensen* 529 U.S. at 587 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). In *Christensen*, the Supreme Court held that an interpretation arrived at without "formal adjudication" or "notice-and-comment rulemaking" did not carry the force of law. *Id*. Moreover, this court has held that "[o]nly after the notice and comment procedure, or similar 'procedural safeguards,' does the presumption of a reasoned and informed articulation of statutory interpretation attach." *Luigi Bormioli Corp., Inc. v. United States*, 24 CIT ___, 118 F. Supp. 2d 1345, 1349 (2000) (citing *Mead Corp. v. United States*, 185 F. 3d 1304, 1307 (Fed. Cir. 1999)). As there is no evidence that TD 83-173 was issued with the benefit of notice and comment procedures, it is appropriate for the Court to afford it respect, but not deference.

The Court next considers whether Customs properly interpreted and applied the relevant tariff provisions. "[T]his Court is to give effect to Congressional intent, and this requires reading all parts of the statute together, including the headnotes, which are the primary source for ascertaining such intent." *Clipper Belt Lacer Co., Inc. v. United States*, 14 CIT 146, 158, 738 F. Supp. 528, 540 (1990) (citations omitted). Headnote 2(b) to Schedule 4, Part 10, TSUS (1986), provides that:

> "Motor Fuel" (item 475.25) is any product derived primarily from petroleum, shale, or natural gas, whether or not containing additives, which is chiefly used as a fuel in internal-combustion or other engines.

As item 475.25 is a "chief use" provision, classification of merchandise thereunder is controlled by

General Headnote 10(e)(i), TSUS (1986), which states that:

> [A] tariff classification controlled by use (other than actual use) is to be determined
> in accordance with the use in the United States at, or immediately prior to, the date
> of importation, of articles of that class or kind to which the imported articles belong,
> and the controlling use is the chief use, i.e., the use which exceeds all other uses (if
> any) combined[.]

> In order to determine the class or kind of goods to which a product belongs, courts are to

consider "all the pertinent circumstances." *United States v. Carborundum Co.*, 536 F.2d 373, 377

(CCPA 1976) (citing *Star-Kist Foods, Inc. v. United States*, 45 CCPA 16, C.A.D. 666 (1957)). In

*Carborundum*, the court stated that:

> Factors which have been considered by courts to be pertinent in determining whether
> imported merchandise falls within a particular class or kind include the general
> physical characteristics of the merchandise, the expectation of the ultimate
> purchasers, the channels, class or kind of trade in which the merchandise moves, the
> environment of the sale (i.e., accompanying accessories and the manner in which the
> merchandise is advertised and displayed), the use, if any, in the same manner as the
> merchandise which defines the class, the economic practicality of so using the
> import, and the recognition in the trade of this use. Susceptibility, capability,
> adequacy, or adaptability of the import to the common use of the class is not
> controlling.

*Id*. (citations omitted). In the present case, Customs' reliance on D 439 to define the class or kind

of products chiefly used as motor fuel takes into account only the physical characteristics of the

merchandise and ignores other factors relevant to ascertaining its chief use. Hypothetically,

exclusive reliance on D 439 might be permissible if Customs established that petroleum products

within every volatility class and AKI application under D 439 are chiefly used as motor fuel within

the United States. As this fact has not been established, such exclusive reliance ignores the chief use

provision of Headnote 2(b) by defining motor fuel based on composition alone.[4]  Since TD 83-173

conflicts with the relevant statute, it cannot support an award of partial summary judgment; therefore

Customs' motion must be denied.


### II. BOUSA's Motion for Partial Summary Judgment

BOUSA presents three major arguments in support of its cross-motion for partial summary

judgment.  First, BOUSA contends that the Court's finding in *Enron Oil Trading & Transportation*

*Co. v. United States*, 17 CIT 222 (1993), that "the chief use of petroleum hydrocarbon mixtures

having an AKI of between 85 and 87 at the relevant time was as blendstock", should apply in the

present case.  Mem. by Pl. in Supp. of its Cross-Mot. for Partial Summ. J. and in Opp'n to Mot. by

Def. for Partial J. of Dismissal ("Pl.'s Br.") at 9.  BOUSA argues that this is appropriate because

"[t]he merchandise at issue in the present case is undeniably similar to the [merchandise] which was

the subject of the Enron case in respect to date of importation" as the entries involved in the two

cases were made within ten months of each other.  *Id.*

The Court finds this argument unpersuasive.  It is well established that *res judicata* principles

do not apply in classification cases unless the entries at issue are identical.  *See United States v. Stone*

*& Downer Co.*, 274 U.S. 225, 235-37 (1926).  In *Enron*, the Customs laboratory had not performed

all of the tests prescribed by D 439 and the AKI of the merchandise was disputed.  *See* 17 CIT at

224-25.  In the present case, the parties agree that the tests prescribed by D 439 were performed and

---

[4]  In light of the Court's determination that TD 83-173 conflicts with Headnote 2(b), it follows that, even if *Chevron* were applicable,  TD 83-173 would not be entitled to deference because it is not "a permissible construction of the statute."  *Chevron U.S.A. Inc. v. Natural Resources Defense Counsel, Inc.*, 467 U.S. 837, 843 (1984).

that, based on the results of those tests, the merchandise satisfies D 439 for certain volatility classes

and AKI applications. *See* Stipulation ¶ 17, 36. In light of the factual differences concerning the

entries in these two cases, the Court's conclusions in *Enron* do not control in the present case.

BOUSA's second argument is that the merchandise at issue should not be classified as

"Motor Fuel" because it is insufficiently volatile and has too low an AKI to be used as motor fuel

at the time and place of importation. This argument is also unpersuasive. In *Amorient Petroleum*

*Co. v. United States*, 9 CIT 197, 607 F. Supp. 1484 (1985), the plaintiff argued that imported

petroleum derivatives, entered at the port of Long Beach, California, should not have been classified

as "Motor Fuel" because they could not be sold as motor fuel within the South Coast Basin of

California due to environmental regulations. *Id*. at 199-200, 607 F. Supp. at 1486. Nevertheless,

the plaintiff stipulated that the product was used as motor fuel outside this geographic area. *Id*. The

court noted that:

> Article I, section 8 of the United States Constitution mandates that "all Duties, Imposts, and Excises shall be uniform throughout the United States." U.S. Const. Art. I § 8 cl. 1. . . . . If this Court were to adopt the interpretation or view of the law urged by the plaintiff, the result would be that similar imports could be assessed different duties at different ports of the United States. This result would be in direct conflict with the constitutional mandate of national uniformity in the administration of the customs laws of the United States.

*Id*. at 203, 607 F. Supp. at 1489. Moreover, the court recognized a line of cases holding that

classification is controlled by the product's chief use within the United States, not a particular state

or region. *See id*. at 201-02, 607 F. Supp. at 1487-88. For these reasons, BOUSA's argument does

not support an award of partial summary judgment.

BOUSA's third argument is that the merchandise should not be classified as "Motor Fuel"

because it is less volatile and has a lower AKI than gasolines sold at retail in the United States during

the relevant time period. This argument is based on an affidavit by Philip L. Stotter, Ph.D., a professor of organic chemistry at the University of Texas, San Antonio, which BOUSA submitted in conjunction with its cross-motion for partial summary judgment. In the affidavit, Dr. Stotter compares the physical characteristics of the subject merchandise with the physical characteristics of gasolines sold at retail during the winters of 1984, 1985, and 1986, as reported by the Motor Vehicle Manufacturers Association ("MVMA"). Dr. Stotter concludes that the subject merchandise lacks certain light volatile components which are present in the gasolines surveyed by the MVMA and necessary for "effective cold engine starts and cold engine idling." Pl.'s Br. at 16 (citing Stotter ¶ 43). Dr. Stotter also finds that the subject merchandise has an AKI "approximately two (2) full units below the average of unleaded regular gasoline sold in the United States". *Id.* at 23 (citing Stotter ¶ 102).

Customs objects to Dr. Stotter's affidavit on the ground that he relies on testimony given by other witnesses in *Enron Oil Trading & Transportation Co. v. United States*, 17 CIT 222 (1993), in reaching his conclusions.[5] Customs also argues that item 475.25 TSUS covers motor fuels other than automotive gasoline. Customs contends that "vehicles for farming, construction or manufacturing operations, or for loading, unloading, or warehousing operations may use gasolines that meet D439 requirements but that are not the gasolines described in plaintiff's papers." Def.'s Resp. to Pl.'s Opp'n to Def.'s Mot. for Partial Summ. J. and to Pl.'s Cross-Mot. for Partial Summ. J. at 3.

The Court agrees that it must disregard Dr. Stotter's affidavit to the extent that it relies on

---

[5] The Court previously denied a motion by BOUSA to incorporate the record from *Enron* into the present action, noting that the rules of the Court of International Trade do not provide for incorporation, although this was permitted under the rules of the Customs Court.

testimony from other witnesses in *Enron*. Pursuant to Rule 804(b)(1) of the Federal Rules of Evidence, former testimony is admissible only where the declarant is unavailable as a witness. In the present action there is no suggestion that these witnesses are unavailable. More importantly, there remains a factual dispute as to whether petroleum products with volatility and AKI characteristics comparable to the merchandise at issue are chiefly used as motor fuel (in automobile engines or otherwise) or as blending stock. *See Riekes Crisa Corp. v. United States*, 84 Cust. Ct. 132, 142-43 (1980) ("In Customs classification cases, chief use, when in dispute, is a question of fact . . . ."). "The court may not resolve or try factual issues on a motion for summary judgment." *Phone-Mate, Inc. v. United States*, 12 CIT 575, 577, 690 F. Supp. 1048, 1050 (1988) (citing *Yamaha Int'l Corp. v. United States*, 3 CIT 108, 109 (1982)). Therefore, BOUSA's cross-motion for partial summary judgment must be denied.

### *Conclusion*

For the foregoing reasons, Customs' motion for partial summary judgment and BOUSA's cross-motion for partial summary judgment are denied. The parties shall confer and submit, within 60 days of the date of this Opinion, a proposed scheduling order setting a date for trial on the issue of the chief use of the subject merchandise.

_____
R. KENTON MUSGRAVE, JUDGE

Dated: April 26, 2001
      New York, New York